Francis C. Lawrence, Respondent, *v*. The Metropolitan Elevated Railway Company et al., Appellants.

In an action, among other things, to recover damages to plaintiff's premises, alleged to have been caused by the construction and maintenance of defendants' elevated railroad in a street in front of them, evidence was given, and it was found that the rental value of the premises had depreciated, because of the road; evidence was also given tending to show that before its construction the house on the premises had been rented by plaintiff's agent to persons who had used it as a house of prostitution. There was some evidence tending to show that said agent, had notice that in some cases the house was so used, and that he renewed leases after such notice, but there was no evidence that he in any way affirmatively aided, abetted or countenanced such use, or that the rent was fixed with reference thereto. Defendants' counsel requested the court to find that the purpose for which the house was used was known to plaintiff's agent, and that for such purpose defendants' acts had caused no diminution in the rental value; these requests were refused as irrelevant. *Held*, no error ; that the particular use of the house had nothing to do with the injury suffered by the plaintiff, but was wholly independent of it.

(Argued April 24, 1891; decided June 2, 1891.)

Appeal from judgment of the General Term of the Court of Common Pleas for the city and county of New York, entered upon an order made January 5, 1891, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This action was brought to recover damages caused by the construction and maintenance of defendants' railroad in front of plaintiff's premises in Amity street, in New York city, and for an injunction restraining the further use of said railroad or to recover the value of the easements taken.

The facts are sufficiently stated in the opinion.

*Brainard Tolles* for appellants. The refusal of the proposed finding as to the use of the premises in suit on the ground of irrelevancy was a refusal to find either way as to the truth of the finding, and raises a question of law as to the materiality of the fact stated. (*James* v. *Cowing*, 82 N. Y. 449; Code Civ. Pro. §§ 992, 993; *Tallman* v. *M. E. R. Co.*, 121 N. Y. 119.) Irrespective of the illegality of the use, the fact that the premises during the period in question were applied to a use with which the elevated railroad did not interfere, was of the highest relevancy. (*Henderson* v. *N. Y. C. R. R. Co.*, 78 N. Y. 423; *Colrick* v. *Swinburne*, 105 id. 503; *Green* v. *N. Y. C. R. R. Co.*, 65 How. Pr. 154; *Kane* v. *Johnson*, 9 Bosw. 154; *Sherman* v. *F. R. S. Works*, 5 Allen, 213; *Jacques* v. *B. R. Co.*, 41 Conn. 61; *Drucker* v. *M. R. Co.*, 106 N. Y. 157; *Pond* v. *M. E. R. Co.*, 112 id. 186; *Tallman* v. *M. E. R. Co.*, 121 id. 119.) In a case where the law refuses damages for an interference with the unlawful use of property, equity will not intervene to prevent such an interference by injunction. (*Drucker* v. *M. R. Co.*, 106 N. Y. 157; Francis on Equity, 7; *Sykes* v. *Beadon*, L. R. [11 Ch. Div.] 170; *Regby* v. *Cormal*, 14 id. 482; *Smith* v. *White*, L. R. [1 Eq. Div.] 626.)

*Henry A. Forster* for respondent. The facts proved entitled plaintiff to an absolute injunction. (*Story Case*, 90 N. Y. 179; *Lahr Case*, 104 id. 295; *Drucker Case*, 106 id. 162; *Kane Case*, 34 N. Y. S. R. 876; *Hamilton Case*, 30 id. 19, 20; *Taylor Case*, 53 Hun, 309; *Milhau* v. *Sharp*, 27 N. Y. 625, 628; *Uline Case*, 101 id. 98; *Williams Case*, 16 id. 111; *Wheelock* v. *Noonan*, 21 J. & S. 286, 294; 108 N. Y. 179, 185; *Meyer* v. *Philips*, 89 id. 485, 491; *W. P. I. Co.* v. *Reymart*, 45 id. 703; *Corning* v. *T. I. & N. Factory*, 40 id. 191, 206, 207; *People* v. *Law*, 34 Barb. 495, 506, 507; *Henderson* v. *N. Y. C. & H. R. R. R. Co.*, 78 N. Y. 430; 17 Hun, 348; *Smith* v. *City of Rochester*, 38 id. 612; 104 N. Y. 674; *Webb* v. *P. M. Co.*, 3 Sumn. 189; *Garwood* v. *N. Y. C. & H. R. R. R. Co.*, 83 N. Y. 404, 406; *Ware* v. *Allen*, 140 Mass. 513, 515; *Lund* v. *New Bedford*, 121 id. 268, 288,

290; *Lawson* v. *Menaha*, 59 Wis. 393, 398.) The condition which the court attached to the injunction that the defendants could avoid it on payment of the fee damage was a grace or privilege to the defendants, which they were free to accept or reject. It did not bind the defendants to pay the fee damage. (*Henderson* v. *N. Y. C. & H. R. R. R. Co.*, 78 N. Y. 423; *N. Y. N. E. Bank* v. *M. E. R. Co.*, 108 id. 660; *Welsh* v. *M. E. R. Co.*, 8 N. Y. Supp. 492; *Carter* v. *N. Y. E. R. R. Co.*, 25 J. & S. 279, 281; *Eno* v. *M. E. R. Co.*, 24 id. 313, 318; *N. Y. N. E. Bank* v. *M. E. R. Co.*, 21 id. 513.) If the defendants accept the condition on which the injunction may be avoided they cannot complain of its terms or that errors were made in ascertaining it; if they reject the condition they are not injured by it because it does not bind them to do anything unless they voluntarily elect to do so. (*Lawrence* v. *M. E. R. Co.*, 35 N. Y. S. R. 38; *Eno* v. *M. E. R. Co.*, 24 J. & S. 313, 318; *Carter* v. *N. Y. E. R. R. Co.*, 25 id. 279; *Smith* v. *Rathbun*, 75 N. Y. 122, 126, 127; *Carll* v. *Oakley*, 97 id. 633, 634; *Bartlett* v. *Stinton*, L. R. [1 C. P.] 483, 484; *Claffin* v. *Frenken*, 29 Hun, 288; *Genet* v. *Davenport*, 59 N. Y. 648; *Bennett* v. *Van Syckel*, 18 id. 481; *Murphy* v. *Spaulding*, 46 id. 559; *Dambmann* v. *Schulting*, 6 Hun, 29.) Whether the condition is accepted or rejected, the defendants cannot attack its terms because as it was offered by the court as a favor in the exercise of its discretion, the defendants cannot complain of the manner in which that discretion was exercised. (*Lawrence* v. *M. E. R. Co.*, 35 N. Y. S. R. 39; *In re Bradner*, 87 N. Y. 171, 177; *Smith* v. *Dodd*, 4 E. D. Smith, 643; *Bartlett* v. *Stinton*, L. R. [1 C. P.] 484; *Vibbard* v. *Roderick*, 51 Barb. 616.) The mere fact that no action was brought until ten years after the erection of the elevated railroad in front of the plaintiff's premises does not constitute acquiescence or estoppel on his part. (*Abendroth's Case*, 122 N. Y. 2; *Ode's Case*, 56 Hun, 199; *Eggleston* v. *N. Y. & H. R R. Co.*, 35 Barb. 162.) No error was committed in admitting the evidence of Shurrager as to the offer to buy the property for $16,500, in 1872. (Abbott's

Tr. Brief, 276, § 738; *Harrison* v. *Glover*, 72 N. Y. 451; *Dalrymple* v. *Hannum*, 54 id. 754; *B. M. Ins. Co.* v. *Slocovitch*, 23 J. & S. 456; *Thurber* v. *Thompson*, 21 Hun, 472; *Denise* v. *Denise*, 110 N. Y. 562; *Slocovich* v. *O. M. Ins. Co.*, 108 id. 56, 63; *Roberts* v. *Johnson*, 58 id. 614; *Cripper* v. *Morss*, 49 id. 63, 67; *Gould* v. *Day*, 94 U. S. 405, 414.) The court was right in refusing to find that the premises had been used as a house of prostitution. (*Ely* v. *Bd. Suprs.*, 36 N. Y. 297; *Callanan* v. *Gilman*, 107 id. 361; *Kenyon* v. *People*, 26 id. 207.) There was no error in the finding that the privacy and retirement of the sleeping-room and sitting-rooms had been invaded. (*Kane Case*, 34 N. Y. S. R. 876; *Drucker Case*, 106 N. Y. 162; *Lahr Case*, 104 id. 295.) There was no error in refusing to provide in the judgment in this action that the injunction should be inoperative, if within sixty days after said judgment was served upon the defendants they had acquired the plaintiff's property by virtue of condemnation proceedings. (*Woolsey* v. *N. Y. E. R. R. Co.*, 31 N. Y. S. R. 91; *Watson* v. *M. E. R. Co.*, 25 J. & S. 376; 29 N. Y. S. R. 512; *Morris* v. *H. T. Co.*, 25 N. J. Eq. 384; *Henderson* v. *N. Y. C. & H. R. R. R. Co.*, 78 N. Y. 423–438; *In re N. Y. E. R. R. Co.*, 18 N. Y. S. R. 144; *In re Kearney*, 55 Hun, 200; *Hughes* v. *M. E. R. Co.*, 25 J. & S. 380; 29 N. Y. S. R. 516.) The point that as the plaintiff did not actually occupy the premises in suit himself, but during the times sued for said premises were rented to tenants; that, therefore, plaintiff was not in possession and cannot recover, is untenable. (*Mortimer* v. *M. R. Co.*, 25 J. & S. 509; *Jutte* v. *Hughes*, 67 N. Y. 207; Code Civ. Pro. §§ 373, 1665; Washb. on Easements [4th ed.], 738; *Smith* v. *Wiggins*, 48 N. H. 185; *Tambert* v. *Hope*, 14 Johns. 383; *B. & P. R. R. Co.* v. *F. B. Church*, 108 U. S. 317; Chitty on Pl. [9th ed.] 132, 133, *Tobias* v. *Cohn*, 36 N. Y. 363; *Campbell* v. *Arnold*, 1 Johns. 511; *Wickman* v. *Freeman*, 12 id. 184; *Holmes* v. *Seeley*, 19 Wend. 507.) As the action was an equitable one for an injunction the plaintiff was entitled to recover as incidental damages the loss of rent down to the time of the trial. (*Barrick* v. *Schifferdecker*, 123 N.

Y. 52; 48 Hun, 355, 357; *Henderson* v. *N. Y. C. & H. R. R. R. Co.*, 78 N. Y. 423, 434–438; *M. A. B. Church* v. *O. S. B. Church*, 73 id. 83, 95; *Vandevoort* v. *Gould*, 36 id. 639, 646; *Beir* v. *Cooke*, 37 Hun, 38, 41; *Corning* v. *T. I. & N. F.*, 40 N. Y. 207; 39 Barb. 326; *Post* v. *W. S. R. R. Co.*, 50 Hun, 305; 123 N. Y. 580; *Shepard* v. *M. R. Co.*, 117 id. 449.) The defendants were not entitled to a jury trial. (*Watson Case*, 21 J. & S. 137; *Sparman* v. *Keem*, 83 N. Y. 245, 250; *Neftel* v. *Lightstone*, 77 id. 96; *Graves* v. *Waite*, 59 id. 156; *Ross* v. *Terry*, 63 id. 613, 614; *Ledwich* v. *McKim*, 53 id. 308; *Tuers* v. *Tuers*, 100 id. 197; *Segelken* v. *Meyer*, 94 id. 474, 484; *Tugman* v. *N. S. Co.*, 76 id. 207; *Greentree* v. *Rosenstock*, 61 id. 583; *Vilmar* v. *Schall*, 61 id. 564, 568; *Connaughty* v. *Nichols*, 42 id. 83; *Austin* v. *Rawdon*, 44 id. 63; *Prudden* v. *Lockport*, 43 How. Pr. 286; *Colton* v. *Jones*, 7 Robt. 194; *Cogswell* v. *N. Y., N. H. & H. R. R. Co.*, 105 N. Y. 319; *Dillon* v. *A. O. Co.*, 49 Hun, 565; *Burrick* v. *Schifferdecker*, 48 id. 356; *Olmstead* v. *Rich*, 25 N. Y. S. R. 271; *Knox* v. *Mayor, etc.*, 38 How. Pr. 67, 69; *Mugler* v. *Kansas*, 123 U. S. 673.)

ANDREWS, J. The judgment awarded to the plaintiff damages in the sum of $2,150 for loss in the diminution of rents of premises in Amity street in the city of New York, owned by the plaintiff, between April 26, 1882, and the time of the trial, occasioned by the construction of the elevated railway in the street, and also an injunction against the further maintenance of the structure unless the defendant should pay to the plaintiff the sum of $4,000, which was found to be the permanent depreciation in the value of the plaintiff's property by reason of the maintenance and operation of the defendants' road, upon the assumption that the street should continue to be used for the railway.

The defendants do not assail these findings nor question the measure or character of the relief granted by the judgment, except upon a single ground. Evidence was given tending to show that prior to the construction of the elevated railway

and from time to time subsequent thereto, during the period for which loss of rents was claimed and awarded, the house on the premises was let by the plaintiff to tenants and was by them used as a house of prostitution. The plaintiff during the whole period for which damages were claimed, lived abroad, and the premises were placed in the charge of a real estate agent who let them for the plaintiff.

The evidence on the part of the plaintiff tended to show .that the construction and operation of the railway in Amity street had resulted in making the locality less desirable for residence purposes and that in consequence the owners of tenant houses on the street were obliged, in order that they should be occupied, to let them to an inferior class of tenants for brief periods and at a reduced rent. The plaintiff's agent rented the house in question to such tenants as applied, and among others who occupied the house for a part of the period for which, damages were awarded, were persons who used the house for disreputable purposes. It is not claimed that the house was let for the purpose of being used as a house of prostitution, and while there is some evidence tending to show that the plaintiff's agent had notice that in some cases the house was so used and that he renewed leases after such notice, there is an entire absence of any evidence that the agent in any way affirmatively aided, abetted or countenanced such use, or that the rent was fixed with any reference thereto. The locality seems to have steadily deteriorated in the character of its inhabitants since the construction of the railway.

The defendants' counsel requested the trial judge to find that the plaintiff's house was used as a house of prostitution to the knowledge of the plaintiff's agent, and also that for the purposes for which it was used the acts of the defendant had caused no diminution in the rental value. The court refused these requests as irrelevant and an exception was taken. Exceptions to the refusal to find these facts present the only questions upon which the defendants rely for a reversal of the judgment. The principle that courts will not lend their aid to enforce any claim repugnant to justice or bottomed upon

an illegal transaction, or give relief contrary to good morals or public policy, is familiar and is founded upon the most obvious policy. The rule is most frequently invoked in cases on contract. Where a party seeks to enforce a contract obligation, the consideration of which is illegal, or which provides for the performance of an illegal or criminal act, the case is plain. There is a class of cases, however, where the contract sued upon appears to have some relation to an illegal transaction or in a sense to spring out of it, where the courts have had difficulty in determining whether the contract fell within the principle. The sale of smuggled goods, or the sale of goods which the vendor knew were purchased to be smuggled, doing nothing to aid or in furtherance of the illegal purpose beyond the bare act of sale, are examples. The general doctrine in these and like cases was very exhaustively considered in the opinions on the argument and reargument in *Tracy* v. *Talmage* (14 N. Y. 162); *S. C.* (p. 210).

In the present case the plaintiff is not seeking to enforce an illegal contract, nor indeed any contract at all. His claim is based upon a trespass whereby he has been prevented from receiving rents from his house which he would have received except for the unauthorized use of the street by the defendants, and to restrain the further continuance of the trespass, except on condition of compensation being made for the injury to the inheritance. The fact that the house had been used as a house of prostitution did not enter as an element into the award of damages, nor could that fact be properly considered. If the plaintiff had sought to enhance the damages on the ground that the rental value of the house as a house of prostitution had been depreciated by the construction of the railway, and the award had been based upon that consideration, the defendant would have had just ground of complaint. If the fact had been found, as requested, that the acts of the defendant did not diminish the rental value of the house as a house of prostitution, it would not show or tend to show that the plaintiff had not been injured in the amount awarded by the court. The testimony showed that the railway had dimin-

ished by the amount awarded, the rents that would have been realized for the ordinary use of the property.

We are of opinion that the requests to find were properly refused. They were based upon a misapprehension of the doctrine that courts will not enforce immoral or illegal claims. The particular use of the house had nothing to do with the injury suffered by the plaintiff, but the injury was wholly independent of such use. The occupation of the house as a house of prostitution was no justification of the injury of which the plaintiff complains. The plaintiff is not seeking to enforce any claim founded upon such occupation. The judgment neither sanctions nor encourages such use. It awards damages which the plaintiff has sustained, however the house may have been occupied. The case of *Ely* v. *Supervisors* (36 N. Y. 297) is quite analogous. It was there held that it was no defense to the liability of a county for the destruction of the plaintiff's house by a mob, that the house was kept by her as a bawdy house and a resort of thieves and criminals, although this may have incited the riot.

The findings requested were irrelevant and the judgment should, therefore, be affirmed.

All concur.

Judgment affirmed.