### COVERT v. VALENTINE et al.

(Supreme Court, General Term, Second Department.   December 12, 1892.)

1. DIVERSION OF WATER COURSE—RIGHT OF ACTION.
      One who digs a ditch, which diverts water from a stream, to the damage of the owner of a pond fed by such stream, is liable for the loss occasioned thereby, even after he has ceased to work on the ditch, since the effect of the wrongful act is continuous.

2. SAME—MUNICIPAL CORPORATIONS.
      The fact that such ditch was dug on land belonging to a city under a contract with the city does not release the person digging it from liability, since a city has no right to authorize the diversion of a water course.

3. SAME—MEASURE OF DAMAGES.
      The measure of damages in such case is the difference in value of the pond caused by the diminution of the water up to the time when the action was begun.

Appeal from circuit court, Queens county.

Action by Abraham D. Covert against David H. Valentine and John P. Cranford.   Plaintiff obtained judgment.   Defendants appeal.   Affirmed.

Argued before DYKMAN and PRATT, JJ.

Johnson & Lamb, (Jesse Johnson, of counsel,) for appellants.
Benjamin W. Downing, for respondent.

DYKMAN, J.   This is a very simple action, and based upon well-defined principles of law.   The plaintiff is the owner of a mill pond which is supplied with water by a running stream called "James Brook," which in its course to the pond of the plaintiff runs over land belonging to the city of Brooklyn.   Under a contract with the city of Brooklyn the defendants constructed an aqueduct from a stream of water called "Ridgewood Stream," on one side of James brook, to a stream of water called "Mansfield Stream," and in doing so excavated a trench across the valley of the James brook about 20 feet in depth.   It is the complaint of the plaintiff that the natural flow of water in James brook has been diminished in quantity by the excavation so made by the defendants, and that

the water in his pond has decreased in consequence of such diminution, and also because the excavation is below the surface of the pond. The action was tried in the circuit upon that theory, and the plaintiff obtained a verdict of $1,000. The defendants have appealed from the judgment entered upon the verdict, and from the order denying a motion for a new trial upon the minutes of the court.

It is the legal right of all riparian proprietors to have natural streams of water flow to and from their land, and it has invariably been held since the time of the Yearbooks, both in England and in this country, that any diversion of such stream is illegal. Such right is inseparably connected with the soil, not as an easement, but as a natural incorporeal right. The principle is so fundamental and so universal as to require the citation of no authority for its sustenance. In the light of the principles thus set before us, we can see that the complaint contains a cause of action, and the testimony shows that the evidence produced in its support is sufficient to sustain the verdict. The general rule of law applicable to this class of cases was correctly laid down to the jury by the charge of the trial judge. He told the jury distinctly:

"Where a party owns land upon which there is a running stream, he has the right to have that stream run forever, and whoever above him diverts or sensibly diminishes the flow of water upon him is guilty of a wrong, and an action lies against such person."

Again, the judge said in his charge:

"It seems that the city of Brooklyn owned the tract of land leading from a lake or pond towards the city. They have the right to dig down upon their land, and put in a conduit to carry the water from their pond to the city of Brooklyn, but in so doing they have no right to divert, diminish, or cut off this stream in question, and they can give no such right to a contractor."

The judge also charged, at the request of the counsel for the defendants, that they were not liable in this action for any loss sustained by the plaintiff for interference with subterranean water having no definite channel, and were not liable except so far as they have interfered with some stream or pond above ground, and were only liable for loss of rental value by the plaintiff. As, therefore, the jury was at liberty only to find a verdict for the diversion or diminution of the water, and there was evidence from which such a finding could be based, it is to be assumed here that the jury so found, and the verdict is for such injury.

It was the claim of the defendants that it was the continuance of the wrong which constituted the cause of action which had accrued to the plaintiff, and that the defendants were not liable for any loss or damage after they completed their work. The defendants commenced the work in September and ceased in November, and this action was commenced in May following, and the effect of the aqueduct upon the stream and pond is continuous. We think the position taken for the defendants is untenable. They perpetrated the wrongful act, and departed, but the injurious effect of the act continued, and the remedy of the plaintiff was an action for the recovery of the damages; and in an action at law for damages to real property resulting from an unlawful act the owner can only recover the damages sustained down to the commencement of the action. Pappenheim v. Railway Co., 128 N. Y. 444, 28 N. E. Rep.

518; Uline v. Railroad Co., 101 N. Y. 98, 4 N. E. Rep. 536; Plate v. Railroad Co., 37 N. Y. 472.   Neither do we think the liability of the defendants ceased when their work was done.   If they had dug a canal, which received all the water in the James brook, and diverted it into a new channel entirely away from the plaintiff's pond, no one would contend that their liability would cease when their work was done which caused the diversion, and yet, to a less extent, that is just what the defendants did.   Again, immunity was claimed for the defendants because their work was done upon land belonging to the city of Brooklyn, but a sufficient answer to the contention is that the city could not divert this water upon its own land, and could not, therefore, authorize its diversion by the defendant.   The act was wrongful, and cannot be justified under any authority.   The rule of damage laid down by the trial judge was the difference in value of the pond caused by the diminution of the water between September and the May following, when this suit was brought, and we think that rule was correct.   Lawrence v. Railway Co., 126 N. Y. 483, 27 N. E. Rep. 765.   This action could not and did not proceed upon the assumption that the wrong and injury will continue forever, and that the permanent value of the real property is diminished, and therefore the diminution of the rental value or the value of the use of the property only is recoverable in this action.   Damages for permanent diminution in the market value could not be allowed.   Uline v. Railroad Co., supra.   Complaint is also made against the amount of the verdict, but it depends so much upon facts that we do not feel justified in any interference.   Our examination of the record detects no error, and the judgment and order should be affirmed, with costs.