No. 44,750

Max L. Campbell, *Appellee*, v. Ralph L. Campbell, Individually
as President, Treasurer and Director of Hydro-Flex Corporation,
Inc., and Hydro-Flex Corporation, Inc., a Kansas Corporation,
*Appellants*.

(422 P. 2d 932)

Opinion filed January 21, 1967.

*J. A. Dickinson*, of Topeka, argued the cause, and *Sam A. Crow, Ralph E. Skoog*, and *Bill G. Honeyman*, all of Topeka, were with him on the briefs for the appellants.

*Ward D. Martin* and *Harvey D. Ashworth*, both of Topeka, argued the cause, and *A. Harry Crane, Arthur L. Claussen, John R. Hamilton* and *Donald D. Barry*, all of Topeka, were with him on the briefs for the appellee.

The opinion of the court was delivered by

HATCHER, C.: This appeal stems from a controversy over an alleged agreement to maintain equal ownership of the controlling stock of a corporation.

We shall state briefly the basic facts which are not in dispute.

The plaintiff and defendant are brothers. There are other nominal defendants but they may be ignored for the purpose of this opinion. In 1957 plaintiff and defendant were associated in the business of installing hydro heating equipment in Spokane, Washington. The plaintiff conceived the idea of a flexible metal hose coupling and fitting. The two brothers worked together in perfecting the idea and an application for a patent was made by the two as co-inventors.

The brothers returned from Spokane, Washington to their home in Topeka, Kansas and in July of 1958, embarked upon a joint adventure for the manufacture and sale of the patented items. It was understood that each would share equally in the venture. The plaintiff was primarily engaged in production while the defendant devoted his attention to sales and promotion. The operations were conducted under the name of M & R Development Company and the trademark "Hydro-Flex" was also used.

The business grew and additional financing became necessary. In the early part of 1960, the brothers organized a corporation known as Hydro-Flex Corporation, Inc. for the sole purpose of raising additional capital to promote the manufacture and sale of the articles covered by their jointly owned patent. The patent, which was the most valuable asset of the joint venture or partnership, was assigned to the corporation. The corporation was authorized to issue 500 shares of stock of which 127 shares were transferred to each of the two brothers. An additional 169 shares more or less had been issued and were outstanding at the time material to this controversy. Of this amount 25 shares were issued to a third brother in consideration of a mortgage on the homestead, the proceeds of which went into the business. This stock was later transferred to others.

The two brothers continued with equal salaries and bonuses and with the same duties and responsibilities in carrying on the business after the corporation was formed.

During the month of December, 1963, the defendant started buying the outstanding stock which had been issued to those other than the two brothers. His purpose was to gain control of the

corporation. The defendant bought the stock secretly. He did not advise the plaintiff—"No, he would have stopped me if I had."

On February 5, 1964, the plaintiff was told by others that the defendant was buying the stock. The plaintiff went to defendant and demanded one-half of the stock which he had purchased. The defendant refused to sell. The action from which this appeal stems followed.

We do not propose to indulge in a more detailed statement of the facts which are disclosed by 600 printed pages of conflicting evidence and documentary proof. It would be of no service to the two litigating brothers or their associates to spread on a permanent record the unfortunate facts which would best be forgotten.

We will proceed to consider the procedural questions which must determine this litigation.

The amended petition was in five counts but the gravamen of the charge was that a joint venture agreement has continued and a confidential or fiduciary relationship has existed at all times pertinent and still exists between Max L. Campbell and Ralph L. Campbell in the business and that—

"Sometime after December, 1963, the exact dates of which are unknown to the plaintiff but within the personal knowledge of the defendant, Ralph L. Campbell, and [1] *in violation of the agreement* between Max L. Campbell and Ralph L. Campbell, [2] *Contrary to the By-Laws of the corporation,* and as [3] *a breach of the confidential or fiduciary relationship existing* between Max L. Campbell and Ralph L. Campbell, the defendant, Ralph L. Campbell, acquired certain shares of stock from other stockholders, the exact number of which is unknown to the plaintiff but within the knowledge of the defendant, Ralph L. Campbell, and believed by this plaintiff to be 145 shares." (Numbers and emphasis supplied.)

We note by emphasis the three charges of misconduct which will become material in connection with the master's findings.

The petition further alleged that since the acquisition of the additional stock by the defendant, plaintiff had been divested of all powers, rights, duties and responsibilities in connection with the management and control of the business. The Hydro-Flex Corporation, Inc. was made a nominal party by the petition.

The defending brother answered in some detail but the answer was in effect a general denial of the allegations of the petition. He also alleged:

"The defendant, Ralph L. Campbell, further states that he has not entered into any agreement with Max L. Campbell, either orally or in writing, to the

effect that he and the plaintiff would continue to be equal owners *forever.*" (Emphasis supplied.)

We emphasize the word "forever" as neither it nor a similar adverb is used in the petition and the word will also become material in connection with the master's findings.

At the pretrial conference a master was appointed by consent of the parties.

After an extended hearing the master filed his report. In the letter of transmittal he stated the issues on the agreement as to the joint adventure as follows:

"The burden of proof in this case was upon the plaintiff. In order for him to prevail it would have to be established that there was [1] an agreement between Max L. Campbell and Ralph L. Campbell that the partnership created with the formation of the M. and R. Development Company was perpetuated into the corporation. Or, [2] that there existed an agreement between Max L. Campbell and Ralph L. Campbell that their interest in Hydro-Flex Corporation, Inc. *would always remain equal.* . . ." (Numbers and emphasis supplied.)

The master made limited findings and a conclusion, which read:

"FINDINGS OF FACT

"1. Ralph L. Campbell, defendant herein, Max L. Campbell, plaintiff herein, and Dean Campbell were partners and doing business as M. and R. Development Company on a 45/45/10 basis prior and up to the incorporation of Hydro-Flex Corporation, Inc., on September 1, 1960.

"2. Ralph, Max and Dean Campbell transferred all assets of M. & R. Development Company, including a patent pending, to Hydro-Flex Corporation, Inc., in exchange for capital stock of said corporation in the amount of 127 shares/127 shares/25 shares, respectively.

"3. Articles of Incorporation were filed on September 1, 1960, and the incorporators, Ralph, Max and Dean Campbell, were the original directors and were duly elected President, Vice-President/Treasurer, and Secretary, respectively.

"4. The stock of Hydro-Flex Corporation issued to Ralph, Max and Dean Campbell was issued to them as individuals and not as partners, joint tenants or tenants in common.

"5. Ralph Campbell did, on or about February 17, 1964, purchase with his own personal credit and borrowings an additional 145 shares of stock in Hydro-Flex Corporation from existing stockholders.

"6. Max Campbell did attempt to purchase for himself the stock owned by Anderson Chandler and his family some time prior to February 17, 1964.

"7. [1] No joint venture or partnership agreement existed between the plaintiff and the defendant, Ralph L. Campbell, after September 1, 1960. [2] No agreement existed between the plaintiff and the defendant, Ralph L. Campbell, that the ownership of the plaintiff and the defendant in the Hydro-Flex Corporation would *always remain equal.* [Numbers and emphasis supplied.]

"CONCLUSION OF LAW

"The plaintiff has failed to establish any cause of action against any of the defendants and judgment should be rendered for the defendants"

The plaintiff filed objections to the master's report, a motion to require the master to make additional controlling facts and a motion to set aside the master's report.

The basis for the plaintiff's somewhat lengthy objections and motions may be summarized:

1 The master failed to set forth the controlling facts on which his ultimate conclusion of fact must be based;

2 failed to make any findings or conclusions on the issue of confidential or fiduciary relationship;

3 failed to make any findings or conclusions on the validity of the stock purchases by the defendant under the articles of incorporation and by-laws, and

4 failed to make any finding as to an agreement to maintain equal ownership of the stock in the corporation as of the time pertinent to the controversy—the finding that there was no agreement that the stock ownership would "always" remain equal, being beyond the issue in the case.

The trial court considered plaintiffs' objections and referred the motion for additional controlling findings of fact and conclusions to the master.

The master reported by letter in which he stated that his finding No. 7 was conclusive as to plaintiff's right to recover and in his opinion other matters were irrelevant. The master concluded:

"For the foregoing reasons I have therefore come to the conclusion that the motions of the plaintiff for additional findings of fact should be and the same are denied."

Plaintiff next filed a paper styled "Objections to Master's report, motion for receiving further evidence, motion for entering of plaintiff's requested findings of fact and conclusions of law and the rendering of judgment in accordance therewith."

The trial court, after a hearing, reopened the case for the purpose of hearing the testimony of the attorney for the corporation. Following the hearing of the additional testimony and reviewing the proceedings the trial court found the master's finding No. 7 to be clearly erroneous and found generally for the plaintiff. The court found that—

"The Master searched for words that would indicate that a partnership or

joint venture between Ralph and Max continued after the incorporation of the business on September 1, 1960, and an agreement that it would 'always' exist."

The trial court ended with 48 findings of fact and wrote an extensive opinion. The issues before us do not require an extension of this opinion by an inclusion of the findings and opinion of the court below. His general conclusions may be gathered from excerpts from his opinion. We quote:

"I construe the testimony of Max Campbell, Dean Campbell and James Grimes sufficient to show the existence of an agreement and an understanding that the two brothers, Ralph and Max, would continue with a partnership-like arrangement between them after the incorporation and that they would continue to participate and control the affairs of the corporation on an equal basis. I believe their testimony. . . .

. . . . . . . . . . . .

"I am satisfied that when these two brothers incorporated their business, it was only for the purpose of expanding and raising capital and that they had no intention of converting it into something that would be thereafter on an arms' length basis or an every-man-for-himself relationship, and that any contrary idea came to Ralph after he and Max were unable to agree on how to expand the business late in 1963; that it was then that Ralph decided to take over.

. . . . . . . . . . . .

"On or about December 3, 1963, Ralph approached Max about the two of them buying up some outstanding shares from other shareholders. Ralph proposed buying it with additional capital and their borrowing the money personally. Max asked why it could not be bought out of corporation funds. They did not reach agreement. This conversation was further evidence of a continuing 50-50 relationship, even up to that date, at least it is consistent with it.

"Up until December 5, 1963, an important date in this lawsuit, the relationship between the brothers, Max and Ralph, I find was still on a 50-50 basis in all respects. No conduct up to that time on the part of either was indicative of a contrary intention. The relationship of Ralph and Max was one of trust. Max was the inside man chiefly responsible for production; Ralph was the outside man promoting sales. The relationship was fiduciary, the kind that one would expect between brothers who had gone along together through bad times and into good times. This was true before and after incorporation.

"There never was any change in their relationship until Max discovered in February, 1964, that Ralph was trying to gain control of the corporation by secret moves. Max then countered with moves to head this off. He tried to buy stock; he was too late. Ralph had enough shares tied up to gain control. He took control in early 1964 and voted his stock to bring about a change in the Board of Directors, a change in the officers, an increase in his own salary and ousted Max from active participation in the business. Max is still on the payroll protected by a restraining order from this court.

"Ralph never did announce his intention to his brother. He asked certain

shareholders not to tell Max, and he testified in court that he did not want Max to find out about it because Max would stop him. Under all the facts and circumstances and the long history of their close and confidential relationship, this conduct on the part of Ralph was unconscionable. Surely there is a remedy for it."

The trial court rendered judgment generally for the plaintiff and against the defendant. That part of the judgment affecting the nature of the relief will be discussed later.

The defendant has appealed. We will for clarity continue to refer to the parties as plaintiff and defendant.

Defendant first contends:

"The Court erred in denying the defendant's Motion for Judgment on the Master's Report since the findings and conclusion set forth therein are fully supported by substantial, competent evidence and 60-253 (e) (2) of the Kansas Statutes Annotated prescribes that 'In an action to be tried without a jury, the Court shall accept the Master's Findings of Fact unless clearly erroneous.' "

The defendant suggests that "the proof that the finding of a master is 'clearly erroneous' should be no less than the 'clear and convincing' proof required to sustain an allegation of fraud."

We would not understress the obligation of a trial court to accept the findings of a master unless it finds them clearly erroneous. However, where the district court in reviewing the master's findings after a consideration of the record is left with the definite and firm conviction that a mistake has been committed, the findings may be set aside as clearly erroneous.

The general rule as announced in the federal cases construing a statute similar to that from which the Kansas statute is taken, reads:

". . . A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (*United States v. Gypsum Co.*, 333 U. S. 364, 68 S. Ct. 525, 92 L. ed. 746, 766. See, also, *United States v. Oregon Med. Soc.*, 343 U. S. 326, 72 S. Ct. 690, 96 L. ed. 978; *Local Union 984, Int. Bro. of Teamsters, Etc. v. Humko Co.*, 287 F. 2d 231; *United States v. Tampa Bay Garden Apartments, Inc.*, 294 F. 2d 598; *W. R. B. Corporation v. Geer*, 313 F. 2d 750.)

We would also suggest, in answer to defendant's complaint that the court had not read all of the testimony and all of the exhibits, it does appear to have read all of the evidence material to the issues before it. In *United States v. Certain Lands in City of Statesboro, Etc.*, 341 F. 2d 742, 744, it is said:

"Under the 'clearly erroneous' concept, a finding is to be set aside 'when although there is evidence to support it, the reviewing Court on the entire

evidence is left with the definite and firm conviction that a mistake has been committed.' We do not interpret this to mean that it is incumbent upon the district judge in every case to read the transcript verbatim. Rather, we think the phrase 'entire evidence' as used means all evidence relevant to the particular finding under attack. . . ."

However, we do not believe that the propriety of the conclusion that finding No. 7 was clearly erroneous turns on the evidence but that it results largely as a matter of law. From the beginning of the action the defendant contended that before the plaintiff could recover he must prove that the agreement to remain equal in the patent and its resulting benefits must be "always or forever." The plaintiff only contended that such an agreement existed for all times pertinent hereto—the latter part of 1963, and the early part of 1964, when the stock was purchased by the defendant.

The defendant was the only witness who testified positively on his own behalf. His testimony reads:

"Ralph Campbell stated that he did not remember any conversation with either or both of his brothers relative to a continuing equal ownership and by-laws to keep it that way. He stated that there was never any agreement that he and the plaintiff would *always* remain equal owners." (Emphasis supplied.)

The following colloquy discloses the position of the parties:

"THE MASTER: I understood you were pretty well in agreement the nature of the partnership agreement.

"MR. DICKINSON: Yes, but not that it was to continue forever. That part of the agreement is by no means agreed to.

"THE MASTER: That's in issue as to how long it was to continue.

"MR. ASHWORTH: This business about it continuing forever is a conclusion drawn by Mr. Dickinson."

The plaintiff has consistently contended that the agreement was to continue only for the duration of the business under the patent, or until cancelled by mutual consent or by one of the parties in writing but that it was in existence at the time the stock in controversy was purchased by defendant.

When the master found—

"No agreement existed between the plaintiff and the defendant, Ralph L. Campbell, that the ownership of the plaintiff and the defendant in the Hydro-Flex Corporation would *always* remain equal." (Emphasis supplied.)

he overreached the material issue of time, and there were no supporting findings to justify any conclusion as to the agreement at the time pertinent to the controversy.

The trial court properly proceeded to make its own findings on the issues as to the time the agreement existed; the effect of the articles of incorporation on stock purchases, and the breach of confidential relationship. The master's conclusory finding No. 7, without supporting findings, was insufficient to suggest the master's reasoning in reaching his conclusion. The court was left without a basis for testing the propriety of the master's conclusion except to review the record and make its controlling findings. In *United States v. Merz*, 376 U. S. 192, 84 S. Ct. 639, 11 L. ed. 2d 629, 634, it is stated:

"Conclusory findings are alone not sufficient, for the commission's findings shall be accepted by the court 'unless clearly erroneous'; and conclusory findings as made in these cases are normally not reviewable by that standard, even when the District Court reads the record, for it will have no way of knowing what path the commissioners took through the maze of conflicting evidence. See United States v. Lewis, 308 F2d 453, 458."

The defendant also contends:

"It was error for the Court to reopen the above entitled cause and receive the affidavit and testimony of James L. Grimes, Jr., over defendant's objection after said cause had been fully tried before Master, . . . . . . . . ., including a further hearing on plaintiff's motion and supplemental motion for additional findings and objections, especially since said witness was listed as a witness of the plaintiff at the very outset of the case and was not called even though he was available at all times during the trial before the Master."

This procedural controversy arose out of a statement of the master in the letter transmiting his report. The statement reads:

"During all of the business activity of Max L. Campbell and Ralph L. Campbell they wisely associated themselves with competent accountants and lawyers. Most of the agreements into which they entered were reduced to writing. Such an agreement as is now asserted by Max would have been of the greatest importance to both Max and Ralph and had it existed I am sure their counsel would have advised them to reduce it to writing."

The statement appears to be argumentative and of little weight as the original joint adventure or partnership agreement was not in writing. However, the trial court faced with the lack of supporting findings was no doubt justified in considering any pertinent evidence. Mr. Grimes had been attorney for the brothers during the partnership and the forming of the corporation, and the master had raised an issue which had not been covered by the evidence.

We are forced to conclude that the trial court had ample authority

under the provisions of K. S. A. 60-253 (*e*) (2) to receive the new evidence. The statute reads in part:

". . . The court after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions."

There is another matter that requires attention. Although the court held generally for the plaintiff and against the defendant the relief decreed was for the benefit of all stockholders. The defendant was directed to offer through the secretary of the corporation the 150 shares of stock which he had purchased subsequent to December 5, 1963, to all stockholders existing at the time of each purchase in order that they have a chance to purchase the stock in accordance with the articles and by-laws of the corporation.

We are forced to disagree with the court's interpretation of the corporation's articles and by-laws. A method of controlling the sale of stock was provided in the original articles of incorporation and by-laws. The original by-laws (Article IX, Section 3) read:

"In case a stockholder desires to sell his share or shares of stock, he must first offer them for sale to the remaining stockholders, it being the intention hereof to give them a preference in the purchase of the same, and any attempted sale in violation of this provision is null and void. A stockholder desiring to sell his stock shall file notice in writing of his intention with the secretary of the corporation, stating the terms of sale, and unless his terms are accepted by any or all of the other stockholders within thirty days thereafter, they shall be deemed to have waived their privilege of purchasing and he be at liberty to sell to anyone else. No certificate of stock shall be transferred to a person who is not a stockholder until it has first been offered for sale to the other stockholders at the book value of the stock as shown on the books of the corporation, but in case the offer to sell is not accepted within thirty days, after such offer has been made, this condition shall no longer attach."

The above quoted provision clearly applied to the sale of stock to any person including another stockholder. Some of the prospective purchasers of stock objected to the provision, particularly that part which required the sale to stockholders at book value. On February 8, 1961, the provision was amended to read as follows:

"In the event a stockholder desires to sell his stock in the corporation, or any part thereof, *to a non-stockholder of the Corporation,* he must first offer the same for sale to the remaining stockholders of record, it being the intention hereof to give the stockholders of record of the Corporation a prior right to purchase any stock offered for sale to a non-stockholder, and any attempted sale in violation of this provision is null and void. Any stockholder desiring to sell his stock, or any part thereof, shall notify the Secretary of the Corporation

in writing of his desire to sell, the number of shares, and the price asked, and the Secretary, upon receipt of said notice, shall immediately notify by Registered Mail, addressed to the last-known address, or the address of record in the stock register, all stockholders of record, and any stockholder or stockholders desiring to purchase same may, by exercising such rights, purchase their pro rata share of same within thirty days of the date of notice given to the stockholders by the Secretary, and by depositing with the Secretary the amount of the price thereof, and upon failure of the stockholders, or any of them, to purchase same within said thirty days, said stockholder shall have the right to sell the same to any person." (Emphasis supplied.)

We are forced to conclude from the clear and unambiguous language of the amended provision that it covered only stock sold to a non-stockholder and not sales by one stockholder to another. Any other construction would completely nullify the first sentence of the amended provision. The purchase of stock made by the defendant was not subject to the amended provision, contrary to the conclusion of the trial court.

There is ample evidence to support the trial court's finding that at the time pertinent hereto the plaintiff and defendant had an agreement that they would share equally in the fruits of the patent which was represented by the stock in the corporation. We approve the court's judgment which was generally for the plaintiff and against the defendant. However, as there was no restriction by the articles of incorporation or the by-laws on the sale of the stock to the defendant we are forced to conclude that the only relief to be granted should be in favor of the plaintiff and not the general stockholders.

The plaintiff should be decreed to be the owner of one-half of the shares of stock in the Hydro-Flex Corporation, Inc., purchased by the defendant, Ralph L. Campbell, subsequent to December 5, 1963, together with the voting rights and all other rights and benefits appurtenant thereto. The plaintiff's title should be absolute subject only to the payment of one-half the purchase price and one-half the accrued interest which is to be applied on the note and mortgage held by the Fidelity State Bank.

The judgment of the trial court is affirmed in part and reversed in part, and remanded with instructions to reinstate the action and enter judgment in plaintiff's favor in accordance with the views herein expressed.

APPROVED BY THE COURT.