No. 55,515

William Earl Goben, *Appellant,* v. Bernard L. Barry and
United Petroleum, Inc., *Appellees.*

(676 P.2d 90)

722

Opinion filed January 13, 1984.

*Orval L. Fisher*, of Shultz, Fisher, Monnat & Shultz, of Wichita, argued the cause and *Craig Shultz* and *Daniel E. Monnat*, of the same firm, were with him on the briefs for the appellant.

*Jim Lawing*, of Wichita, argued the cause for the appellees and was on the briefs for appellee United Petroleum, Inc., and *Warner Moore*, of Warnick & Moore, of Wichita, was on the briefs for appellee Bernard L. Barry.

The opinion of the court was delivered by

HERD, J.: This is an action for breach of contract and for an accounting and dissolution of a corporation.

The appellant, William Goben, and the appellee, Bernard Barry, met in 1977 when both started working for National Crude, Inc. Barry worked for only two weeks but Goben continued his employment, during which time Goben and Barry kept in touch.

From his experience with National Crude, Goben concluded he could sell oil and gas drilling deals for himself as easily as for others. He discussed organizing his own oil company with Barry and two or three other persons. After a few meetings at a Wichita steakhouse, Goben and Barry agreed to enter into a joint venture to sell fractional working interests in oil and gas drilling ventures. According to the agreement, Goben would furnish customers and Barry would furnish the leases. Additionally, Goben was to recruit a sales force and be in charge of selling, while Barry was to manage office operations. They agreed the venture would be financed by sale of the fractional interests and profits and losses would be divided equally. Barry loaned their company $4122.48 as seed money to set up an office from which operations could be commenced.

Pursuant to the agreement, Barry rented an office and obtained the "Tillotson" lease. Because of Goben's tax problems they decided to incorporate the business. Goben selected the name United Petroleum, Inc. (UPI). Barry did the paper work and incorporated the venture under Goben's selected name. They prepared and printed a prospectus. Goben then started selling one thirty-second interests in the first well on the Tillotson lease for $1995 each, plus completion costs of $2295 per unit. They agreed twenty-eight units would be sold and the company would

retain one-eighth for itself as a carried interest. Goben sold twenty-four of the twenty-eight units between March 1978 and May 15, 1978. Goben and Barry divided the commission of $200 per unit equally. The first well drilled was successful. Completion costs were collected and the venture prospered. By June 30, 1978, the balance in the company checking account was $101,785.79, having increased from only $14,858.97 two months earlier. On May 16, Barry was reimbursed the sum he loaned the company for temporary financing. Thereafter, the new business operated entirely on its earnings. By November, 1978, Goben and Barry had sold interests in their ninth oil well, seven having already been successfully drilled.

When the drilling on the Tillotson lease resulted in production, the sales force which Goben had recruited for the partnership started selling fractional interests in oil wells to be drilled on additional leases which Barry had obtained in the name of United Petroleum, Inc. Goben and Barry, in accordance with their agreement, continued to draw equally on a weekly basis which was initially set at $500 per week and then at $560 per week.

The company continued to prosper. In August of 1978, $100,000 was withdrawn from the checking account of the corporation and invested in a certificate of deposit. An additional $50,000 was withdrawn from checking and invested in another certificate of deposit just one month later. In October, two $100,000 certificates of deposit were purchased, leaving a checking account balance of $98,293.66.

On October 11, 1978, Barry, without Goben's knowledge, drew $2000 instead of $560 for his weekly pay. Thereafter, he continued to pay himself weekly draws of $1700. About the same time, Goben became aware of a tension developing between himself and Barry. From their actions, Goben suspected Barry and the sales manager Goben had recruited were scheming to cut Goben out of his interest in the company. Late in November, to investigate the status of the company, Goben asked Barry to see the check register. Barry appeared to be insulted, saying, "I guess this will always stick in my craw." A discussion ensued about dividing the company, but the two separated without coming to a decision.

On the Monday following Thanksgiving, Goben called Barry's

home and told Mrs. Barry he would not be in the office that morning. Later Barry called Goben and said, "I have talked to my attorney, the attorney tells me you don't have a leg to stand on . . . I will give you $10,000 (for his interest in the company)." Goben replied, "Look, Barry, don't give me ultimatums," and Barry responded, "All right, you'll get nothing."

Barry took Goben's personal belongings from the office to a storage company. The following Wednesday, Barry took possession of a 1977 Monte Carlo automobile which had been purchased by the company for Goben's use.

Drilling was continued on various wells and other interests continued to pay into the venture. Some twenty additional producing wells were drilled after November, 1978.

Goben filed the present action on December 21, 1978. Barry denied the joint venture existed and Goben's ownership in the company. In the meantime, the venture was doing so well that toward the end of the fiscal year, February 28, 1979, the accountant for United Petroleum, Inc., advised larger salaries be paid to the corporate officers because the income appeared to be out of proportion to the salaries. The officers of the corporation were Barry, his wife and his son. The accountant testified this recommendation was made from a tax standpoint.

The records for United Petroleum Inc., show salaries paid to Barry and his wife in 1979 were $84,675; in 1980 they were $108,800; in 1981 they were $157,600; and in 1982 they were $146,500.

On August 12, 1980, Barry purported to transfer to his wife one-half of the total issued stock of United Petroleum, Inc.

After a lengthy trial, the trial court entered judgment for Goben finding generally that a joint venture existed which Goben and Barry were to share in equally. After an accounting of the business, judgment was granted in favor of Goben for half the profits of the company from its inception until November 28, 1978. Additionally, Goben was granted profits from the wells which were producing before November 1978. Punitive damages were awarded against Barry in the amount of $82,237. The total judgments were therefore $110,827.06 against Barry and United Petroleum, Inc., and $82,237 against Barry personally. Goben, the plaintiff, now brings this appeal and Barry cross-appeals.

The initial issue is whether there was sufficient evidence to support the trial court's finding of a joint venture. A joint venture is defined as:

" 'an association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business venture for joint profit, for which purpose they combine their efforts, property, money, skill and knowledge, without creating a partnership or a corporation, pursuant to an agreement that there shall be a community of interest among them as to the purpose of the undertaking, and that each joint venturer shall stand in the relation of principal, as well as agent, as to each of the other co-venturers, with an equal right of control of the means employed to carry out the common purpose of the venture . . . .' " *Neighbors Construction Co., Inc. v. Seal-Wells Construction Co., Inc.,* 219 Kan. 382, 385, 548 P.2d 491 (1976), quoting 46 Am. Jur. 2d, Joint Ventures § 1, pp. 21-22.

We further discussed the ingredients of a joint venture in *Stricklin v. Parsons Stockyard Co.,* 192 Kan. 360, 363, 388 P.2d 824 (1964):

"It is unnecessary to define precisely the term 'joint adventure,' but suffice it to say it is an association of two or more persons to carry out a single business enterprise for profit. [Citations omitted.] A joint adventure can exist only by the agreement of the parties. [Citation omitted.] The agreement may be found in the mutual acts and conduct of the parties. [Citations omitted.] While courts do not treat joint adventure in all respects as identical with a partnership, it is so similar in its nature and in the contractual relations created thereby that the rights and liabilities as between the adventurers are governed practically by the same rules that govern partnerships. [Citations omitted.] The usual test of a partnership as between the parties to a joint adventure is their intent to become partners. Joint ownership of property is not essential to create the relationship; it is only a circumstance which should be considered with other circumstances."

After examining these cases we held in *Modern Air Conditioning, Inc. v. Cinderella Homes, Inc.,* 226 Kan. 70, 76, 596 P.2d 816 (1979):

"In sum, the cases indicate that a joint venture is an association of two or more persons or corporations to carry out a single business enterprise for profit; it may be found in the mutual acts and conduct of the parties. Among the acts or conduct which is indicative of a joint venture, but no single one of which is controlling in the determination, are: (1) the joint ownership and control of property; (2) the sharing of expenses, profits and losses, and having and exercising some voice in determining the division of the net earnings; (3) a community of control over and active participation in the management and direction of the business enterprise; (4) the intention of the parties, express or implied; and (5) the fixing of salaries by joint agreement. The following acts or conduct have also been mentioned as being helpful, but one authority does not consider them so; (a) investment in the business of undistributed profits for the purpose of building up a substantial cash

reserve; (b) the charging of losses against accumulated profits; and (c) division of undistributed profits in the event of liquidation contingent upon repayment to one of the parties of cash originally invested in capital."

Here, there was evidence of joint control of the property, according to the joint venture agreement. There was also evidence the agreement provided for a sharing of profits equally between Goben and Barry. They also agreed to divide the sales commissions equally as separate items from their weekly salaries. There was active participation by both Goben and Barry in the company. Barry controlled the management and drilling end while Goben supervised and participated with the sales force. The intention of the parties may be implied from their common reference to each other as partners without objection by the other. Salaries were fixed by the joint venture agreement to be $500 per week, which was later changed to $560. Barry later drew a larger amount, but this was without Goben's knowledge or consent. There was also investment in the business of undistributed profits for the purpose of building up a substantial cash reserve in order to make the business a successful ongoing concern.

According to the definition and factors to be considered in establishing a joint venture, we hold there was substantial evidence to support the trial court's finding of a joint venture in this case.

Cross-appellant, United Petroleum, Inc., argues if there was a joint venture agreement, it was illegal and unenforceable, since its intent was to avoid Goben's personal income tax liabilities. "It is elementary law that a contract obligating the parties . . . to violate a penal statute is unenforceable and void; and the breach of such contract is *damnum absque injuria* - a matter for which the law provides no redress." *Roddy v. Hill Packing Co.*, 156 Kan. 706, 715, 137 P.2d 215 (1943). In support of Barry's argument concerning the illegality of the joint venture agreement *Sheldon v. Pruessner*, 52 Kan. 579, 35 Pac. 201 (1894), is cited. *Sheldon* involved an individual who transferred a note to his father in order to avoid paying taxes on the note. This court held the transfer was unenforceable since avoiding a tax obligation was its sole purpose. Such is not the case here. While it is true Goben owed a substantial amount of back taxes, the joint venture was not entered into to avoid this tax

liability. Rather, the purpose of the joint venture was to explore for oil and gas and to produce it if discovered. The corporation was conceived as a way to protect the outside investors from Goben's tax obligations. Goben was open about his tax problems, which prevented his associates from suffering as a result. The devious practices utilized to hide Goben's assets are not at issue since such practices were not the purpose of the joint venture.

Barry next argues Goben must be denied recovery because he came to court with "unclean hands." This fundamental maxim of equity "signifies that a litigant may be denied relief by a court of equity on the ground that his conduct has been inequitable, unfair and dishonest, or fraudulent and deceitful as to the controversy in issue." 27 Am. Jur. 2d, Equity § 136, p. 667. Equity will not permit a litigant to rely on his own wrongful conduct to recover. Such is not the case here. The dishonest act Barry asserts should deny Goben recovery is Goben's substantial unpaid taxes. The issues in controversy, whether there was a joint venture and a breach of fiduciary duties, are totally unrelated to Goben's tax liability. Furthermore, Goben is not relying on tax avoidance to effect recovery. A case illustrative of the need for the "unclean act" to be related to the suit is *Lawrence v. M. E. R. Co. et al.*, 126 N.Y. 483, 27 N.E. 765 (1891). In that case the New York court held a defendant in a suit based upon injury to real estate could not use the unclean hands doctrine merely because the plaintiff's tenants maintained a house of prostitution on the premises. While Goben's acts may be wrongful, they have no connection to this case.

There is another doctrine closely related to "clean hands." It is the principle of "in pari delicto." It requires when "the wrong of the one party equals that of the other, the defendant is in the stronger position." 27 Am. Jur. 2d, Equity § 141, p. 676. This requires the court to weigh the wrongful acts of each party. The purpose is to avoid allowing an overwhelmingly offensive act of the defendant to stand merely because the plaintiff's conduct was also wrongful, although slight.

In the instant case, Goben, while practicing some questionable acts of tax avoidance, was negotiating with the government to meet his obligations. Barry, however, purposefully and wrongfully ousted his partner from their joint venture and refused to account for the profits contrary to his fiduciary duty as

later discussed. The motive was solely monetary gain. Barry sought to benefit substantially from this conduct. It cannot be said Goben's wrongful conduct outweighed Barry's.

We hold the joint venture agreement between the parties was not voided or rendered unenforceable because of an unlawful purpose or under the "clean hands" doctrine. This issue is without merit.

Barry also argued there can be no recovery on the joint venture contract because it was oral and thus in violation of the Statute of Frauds. The law in Kansas is well settled. The Statute of Frauds is inapplicable to an oral partnership agreement to engage in the business of procuring oil and gas leases despite the fact the Statute of Frauds applies to the leases themselves. See *Potucek v. Blair*, 176 Kan. 263, Syl. ¶ 4, 270 P.2d 240 (1954), and *Bird v. Wilcox*, 104 Kan. 799, 180 Pac. 774 (1919). Therefore, while the lease arrangement must be written, the contract to enter into a partnership to procure leases need not be.

Barry alleges the trial court erred in finding he owed a fiduciary duty to Goben. Joint venturers owe the same fiduciary duty to each other as do partners. See *Martin v. Hunter*, 179 Kan. 578, 297 P.2d 153 (1956). Since Barry and Goben participated in a joint venture together, Barry owed Goben "full, fair, open and honest disclosure of everything affecting the relationship." 179 Kan. 579, Syl. ¶ 4. Barry's payment to himself of a larger than agreed-upon salary, refusing to account and ousting Goben are examples of his breach of duty.

Barry argues the evidence does not support a finding of fraud and, therefore, the trial court erred in awarding punitive damages. Punitive damages may be awarded in the trial court's discretion whenever there is proof of fraud. See *Augusta Bank & Trust v. Broomfield*, 231 Kan. 52, 643 P.2d 100 (1982). Fraud itself is difficult to define, but it has been held fraud " 'in its general sense, is deemed to comprise anything calculated to deceive, including all acts, omissions, and concealments involving a breach of legal or equitable duty, trust, or confidence justly reposed, resulting in damage to another . . . .' " 231 Kan. at 64. Barry concealed his withdrawals, denied Goben had any interest in the company and ousted him, all to Goben's damage. That is sufficient evidence of fraud. The trial court did not err in awarding punitive damages.

The final issue is that raised by Goben. He argues the trial court erred in finding Barry properly ended the joint venture in November, 1978, and thereby allowed damages only to that date. Barry argues the trial court did not err since a joint venture may be unilaterally terminated at any time. For support of this Barry cites *Evans v. Aylward,* 166 Kan. 306, 201 P.2d 1044 (1949). The facts in *Evans* are quite similar to those in the instant case. *Evans* involved two individuals who formed a business to salvage oil properties. One person provided the expertise and the other provided financial support. The partnership agreement, which was written, allowed either individual to withdraw from the venture after giving ten days' notice. One of the joint venturers acted on this clause and terminated his interest. Instead of making an accounting, however, to determine each individual's fifty percent share of the business, they made a monetary settlement. In reviewing the action of the venturers, this court stated at page 311:

"The next ground pleaded by plaintiff to set aside this release is that defendant in violation of his contract refused to continue the oral agreement, refused to make division of the profits or any further advancements to plaintiff and insisted that plaintiff execute to him an assignment of all interest in the property owned by the partners. Plaintiff testified to these facts and for the purposes of this record they must be taken as true. They amount to nothing more, however, than a statement that defendant had decided to take advantage of the clause in the written contract to discontinue the relationship at ten days' notice. Naturally if he decided to discontinue the partnership he would cease paying plaintiff the $300 a month from his own assets. What plaintiff would draw from the partnership assets would be a matter of an accounting between the parties unless, as done here, they agreed on a settlement. To hold otherwise would be to hold that once a party had entered into such an arrangement of this kind he could never withdraw from it. Such is not the law regardless of the ten-day clause."

In the present case the parties did not agree on a settlement, thus according to Barry's own argument Goben was entitled to an accounting and division of property. The question, however, is whether in the absence of the accounting and division of the joint venture property the termination of the joint venture is void. While respecting the authorities that a joint venture may be terminated by either party, we hold such termination, to be effective, requires an accounting and division of property. Here, Barry failed to account or divide the property. The termination is therefore void and Goben is entitled to his share of the profits until the termination is properly effected.

Goben next argues the joint venture agreement made him the equitable owner of one-half interest in the corporation, and as such he is entitled to the benefits of K.S.A. 17-6804(*d*) which provides a dissolution procedure for corporations having two equal stockholders.

The trial court found the joint venture agreement did provide for Goben and Barry to share equally in the business, stating:

"Goben and Barry's relationship is that of equal partners. The joint adventure did not merge in the corporation because it was the agreement of the parties that the adventure continue through the corporation."

There is Kansas authority for a joint venture agreement to control the percentage of ownership in a corporation, despite one partner owning more stock than another. See *Campbell v. Campbell,* 198 Kan. 181, 422 P.2d 932 (1967). In *Campbell,* two brothers entered into a joint venture to manufacture and sell certain items on which they had a patent. A corporation was subsequently formed with the brothers as equal shareholders and the patent was assigned to the corporation. The defendant began secretly buying outstanding minority interests in the corporation, and ousted the plaintiff who then brought suit alleging breach of the joint agreement under which the brothers had agreed to split profits and control equally. The trial judge in that case made the following finding: " 'I construe the testimony . . . sufficient to show the existence of an agreement and an understanding that the two brothers . . . would continue with a partnership-like arrangement between them after incorporation and that they would continue to participate and control the affairs of the corporation on an equal basis.' " 198 Kan. at 186. In agreeing with the trial court this court held:

"There is ample evidence to support the trial court's finding that at the time pertinent hereto the plaintiff and defendant had an agreement that they would share equally in the fruits of the patent which was represented by the stock in the corporation. We approve the court's judgment which was generally for the plaintiff and against the defendant." 198 Kan. at 191.

In *Campbell,* the plaintiff actually held some stock, although not fifty percent. In the instant case, Goben has no stock in his name; however, following *Campbell* we hold the agreement, not the actual stock, controls the partners' shares in the corporation.

We conclude Goben is entitled to a judgment for one-half the assets and net profits of the joint venture from the beginning.

The joint venture assets include all the corporate assets of United Petroleum, Inc. We also conclude Goben is entitled to prejudgment interest on his share of the joint venture distributions to Barry and his family. The judgment shall constitute a lien on the shares of common stock and assets of United Petroleum, Inc. The division of the corporate assets shall be accomplished by a dissolution of United Petroleum, Inc., pursuant to K.S.A. 17-6804(d).

We affirm the trial court's finding of a joint venture and the award of punitive damages. We modify the award of compensatory damages to include one-half the joint venture net profits from the beginning thereof and one-half the joint venture assets, and remand this case to the district court with directions to dissolve United Petroleum, Inc., and divide its assets equally between Goben and Barry. The district court is further directed to determine the net profit of the joint venture from its beginning and the amount of prejudgment interest on one-half of all distributions made by United Petroleum, Inc., or the joint venture to Bernard Barry, his wife and son in excess of the distributions made to William Goben, except Marilyn J. Barry shall be allowed a reasonable wage for her services to the joint venture. The district court is further directed to enter judgment in favor of William Goben against Bernard Barry and United Petroleum, Inc., in accordance with the views herein expressed.

LOCKETT, J., not participating.