(107 P.3d 1237)
No. 91,783

ROMAN H. SCHAUF and LEONA SCHAUF, *Appellees*, v. MICHAEL D. SCHAUF and JOANN M. SCHAUF, *Appellants*.

Opinion filed March 4, 2005.

*Craig Shultz,* of Law Office of Craig Shultz, P.A., of Wichita, for appellants.

*Robert T. Cornwell, Leon G. Keiter,* and *Harold T. Pickler,* of Wichita, for appellees.

Before MARQUARDT, P.J., GREENE and CAPLINGER, JJ.

*Per Curiam:* Michael D. Schauf (Mike) and his wife JoAnn M. Schauf appeal the district court's order adopting the findings of fact and conclusions of law of the "special" master, who determined the nature and extent of an implied partnership relation with Mike's parents, Roman and Leona Schauf, following a jury determination that such a partnership relation existed. Mike and JoAnn argue that (i) the court and the master failed to give due credit to the jury determination and allowed relitigation of issues that were inherent in the special jury verdict; (ii) they were entitled to a jury trial on some of the issues determined by the master; and (iii) the court erred in appointing a master and ordering that person to also serve as mediator. We review the extensive record and affirm the district court.

### Factual Overview

This litigation involves an aged and contentious family feud between parents and their son and his wife to dissolve and separate this son's alleged interests in the family farming operation. From the time of his childhood, Mike lived and worked on the family dairy operation in Butler County, Kansas. Upon his graduation

from college in 1971, he returned home, moved into the family residence, and assisted in the dairy operation. He continued his active participation in the family dairy business until August 1992, although his devotion of time to the business diminished in the later years when he pursued separate agricultural pursuits. During this 21-year period, there was never any written partnership agreement and there has been a substantial dispute regarding discussions about Mike's "interests" in the business, but Leona and Roman deny that there were ever any discussions promising Mike any interest in the business.

Although management of the dairy operation was the subject of family discussion and some operational decisions were made by Mike, Leona maintained total control of all financial aspects at all times. All income was paid to Leona, who determined randomly how much would be paid to family members. After April 1985, Leona decided to divide the "second" monthly milk checks into one-third shares to Leona, Mike, and younger brother Jaye and to similarly share the proceeds from the sales of any male calves. The parties also agreed to hold separate ownership of the female cattle by tagging them with colored ear tags to distinguish ownership among Leona, Mike, and Jaye. These income distribution and cattle ownership decisions were accepted by the acquiescence of all parties until Mike's departure. At no time was there a demand for an accounting among alleged partners, nor was there ever a partnership bank account, a partnership tax identification number, a partnership tax return, or the issuance of partner schedules showing any income from a partnership. Jaye denies the existence of any partnership.

During the period from 1971 to 1992, the parties conducted substantial separate business and real estate transactions. The parties never treated these separate operations as joint or partnership activities and made no demands for any accountings or shares of profits. Real estate owned by the parties was titled to each party or parties without regard for any alleged partnership interests of the others. At no time until this litigation did Mike express or assert in any way his alleged rights as a partner in any assets, business activities, or real estate interests of his parents.

*Procedural History*

In November 1992, Leona and Roman initiated this litigation by filing an eviction action against Mike and JoAnn, who responded with a counterclaim alleging equitable ownership of real and personal property, requesting an accounting of all profits from the farming operation since 1971 and an injunction against "removal of equipment and products," and demanding a trial by jury. In June 1995, Mike and JoAnn sought and procured an "order bifurcating the issue of the existence of a partnership between the parties from the issues of [an] accounting and damages flowing therefrom." A special verdict of the jury found simply that "the parties were in a partnership relation." Extensive and contentious discovery then ensued over the course of nearly 6 years on a host of issues.

In October 2000, the district judge wrote to counsel and advised that "because of the extensive accounting issues involved in this case, I am giving serious consideration to the appointment of a master to try all issues." The remaining issues were then listed by the court before requesting a written response from counsel. Counsel for Mike and JoAnn timely responded, stating that some of the remaining issues "were inherently tried" before the jury and suggesting that appointment of a master would not be appropriate. Their response concluded:

"Obtaining someone outside of the judicial system to serve as a master in this case would be extraordinarily time consuming and expensive. It is our belief that those issues not triable to a jury, if any truly exist, *should be simply tried to the court* without a master who will not have the authority, ultimately, to make the decisions necessary in this case. Accordingly, we request Your Honor not appoint a master." (Emphasis added.)

On July 10, 2001, the district court appointed Senior Judge James P. Buchele as mediator pursuant to K.S.A. 5-501 *et seq.* "to assist the parties in resolving all disputes herein" and as master pursuant to K.S.A. 60-253 "to faithfully hear and determine all issues necessary for a final resolution of all justiciable controversies raised by the pleadings and not previously ruled upon by the Court." No objections were made by any party to this order of appointment at any time until after the master's report was filed.

The mediation apparently failed, and after trial of all remaining issues to the master, on March 11, 2002, the 17-page "Report of Special Master" was issued, containing 68 numbered findings of fact, 12 conclusions of law, and 12 itemized determinations, essentially concluding that the implied partnership was limited to the parties' agreement by acquiescence as to the distribution of incomes from the dairy operation and sales of male calves and recommending that Mike be awarded judgment for only the average sales price for 10 head of cows in the amount of $5,053 that he was to receive as a wedding gift and for $7,369.76 from the final sales of male calves. The master expressly concluded that "Mike Schauf does not now nor did he ever acquire any rights or interest in the real estate, cattle, income, bank accounts, savings or other cash assets titled in the name of Leona or Roman Schauf." After receiving written objections and comments from counsel, and entertaining argument on same, the district court adopted the master's report as its judgment. Mike and JoAnn have appealed.

*Did the Report of the Master Disregard the Jury Verdict and Address Issues Already Determined by the Jury?*

Following the jury trial, Mike and JoAnn argued that the jury's finding "inherently concludes that the property discussed in the trial was a part of the 'partnership relation' which it found." The pretrial order for the balance of the proceedings, however, lists the following issues as those identified by Mike and JoAnn:

"a. Were the parties partners or joint venturers in the Schauf Dairy operation and in all of the farming interests of Schauf Dairy?

"b. If the parties were partners or joint venturers, what property belongs in the partnership and what is the proper distribution as between the parties?"

On appeal, Mike and JoAnn argue that the master disregarded not only the jury verdict finding that the parties were in a partnership relation, but also the findings that were inherently part of that verdict. They argue that the evidence presented to the jury, the manner in which the case was presented, and the court's instructions to the jury were indicative of an "all or nothing" approach and that "Mike was entitled to judgment for at least one

third to one-half of the assets of the venture/partnership from the beginning, including all of the assets of Schauf Dairy."

The master addressed this issue by stating:

"The parties claims and arguments of counsel made at the first trial cannot change the scope or meaning of the Jury's General Verdict. The jury was not asked to define the parties' partnership agreement, to determine the partnership assets or the parties' interests in the partnership upon dissolution."

We agree with the master for several reasons. *First*, it cannot be denied that the exclusive extent of the special verdict was to determine whether the parties were in a partnership relation— nothing more and nothing less. *Second*, the issues of fact identified by Mike and JoAnn for the pretrial order for the second trial recognized the existence of issues regarding the nature and extent of the partnership relation, identification of partnership property, and its "proper distribution" among the parties. *Third*, Mike and JoAnn's arguments on appeal are vague and ambiguous in suggesting that Mike is entitled to "one-third to one-half of the assets of the venture/partnership . . . including all of the assets of Schauf Dairy"; this statement demonstrates uncertainty as to the nature of the arrangement and as to the correct proportionate interest of Mike, and it fails to indicate *which* assets should be considered as those of Schauf Dairy. It is simply indisputable that the special jury verdict was extremely limited and left unresolved a host of issues necessary to any conclusion of the litigation.

Finally, and perhaps most importantly, the procedural state of affairs following the special jury verdict was in no small manner the result of the action and inaction of Mike and JoAnn. Indeed, it was Mike and JoAnn who moved for bifurcation, suggesting that the issue of the existence of a partnership be separated from issues of an accounting and damages—this reflected an extreme oversimplification of the issues framed by the litigation. Moreover, Mike and JoAnn did not propose any jury instructions or special verdict forms that would have more fully addressed those issues that they claim were inherently included in the jury trial. Indeed, this would have been an ideal situation for using multiple special verdict forms or a general verdict accompanied by answers to interrogatories as

provided for by K.S.A. 60-249(a) and (b), but no such procedures were requested. Significantly, Mike and JoAnn did not object to the instructions or simplistic special verdict form that were utilized by the court, except to urge the inclusion of alternate terminology regarding a joint venture.

For all of these reasons, we are not sympathetic to Mike and JoAnn's complaints that the master addressed numerous issues not resolved by the jury verdict. We do not endorse the simplistic special verdict form that was used, but the failure of a special verdict form to resolve other issues tried to a jury does not warrant the need for further jury proceedings where the complaining party did not object to the special verdict form employed. K.S.A. 60-249(a) (constitutes waiver); *Hall v. High*, 214 Kan. 489, 490, 520 P.2d 1283 (1974); see *Butler County R.W.D. No. 8 v. Yates*, 275 Kan. 291, 296, 64 P.3d 357 (2003).

Mike and JoAnn further argue that the principle of inherent findings in the verdict of a jury has been embraced by a host of Kansas cases, citing *Holder v. Kansas Steel Built, Inc.*, 224 Kan. 406, 413, 582 P.2d 244 (1978), *State v. Spray*, 221 Kan. 67, 558 P.2d 129 (1976), *Thompson v. Norman*, 198 Kan. 436, 424 P.2d 593 (1967), and *Lightcap v. Mettling*, 196 Kan. 124, 409 P.2d 792 (1966). Although we do not take issue with the notion that a verdict may imply certain inherent findings, none of these authorities suggest that a special verdict that merely finds a partnership relation implies other findings on disputed issues that were neither resolved by nor inconsistent with the verdict rendered, including the nature and extent of the partnership, time frames of its existence, properties contributed, proportionate interests, profits payable, and related issues.

Mike and JoAnn also cite *Goben v. Berry*, 234 Kan. 721, 676 P.2d 90 (1984), for support of their position that there were inherent findings in the special verdict. We disagree; in *Goben* the court found generally that a joint venture existed by an express agreement in which Goben and Berry were to share equally, but the court failed to recognize that this implied a sharing of both the profits and assets *of the venture*. 234 Kan. 726, 729-31. The distinction is that here we have an implied partnership based upon a

host of business transactions and property acquisitions over a period of 21 years with no formal agreement to establish any parameters whatsoever; absent a defined venture subject to division and some finding of proportionate interests, we are not persuaded that *Goben* is applicable.

Finally, we are not persuaded that the master disregarded the special jury verdict. Consistent with the jury finding of a "partnership relation," the master's report acknowledged and recommended enforcement of an implied partnership to the "second" milk incomes and proceeds from sales of male calves since 1985, in accordance with an implied agreement of the parties. It concluded, however, that the evidence failed to support any other expressed or implied agreements for sharing incomes from the Schauf Dairy or any other agreement that would entitle Mike to additional incomes from or interests in his parents' property. These findings are fully consistent with the limited special jury verdict.

For these reasons, we conclude that the scope of the master's report was fully consistent with the special verdict of the jury, and there was no error in its adoption by the district court.

*Were Mike and JoAnn Entitled to a Jury Trial on Some of the Issues Determined by the Master and Adopted by the District Court?*

Mike and JoAnn next argue that if the special jury verdict was limited to its express terms, the remaining issues included factual determinations that should have been made by a jury rather than a master. This argument has been waived under K.S.A. 60-249(a) and reflects a fundamental misunderstanding of K.S.A. 60-253.

At the outset, we note that Mike and JoAnn's demand for a jury trial rather than the master proceeding on some of the remaining issues was waived as a matter of law upon submission of the special verdict form to the jury. K.S.A. 60-249(a) provides that where the court submits a special verdict as here, a party is deemed to waive its right to jury trial on any other issues of fact raised by the pleadings or the evidence absent a demand for submission of further special written findings.

" 'Under [K.S.A. 60-249(a)] the value of special verdicts is retained and the dangers of overlooking material issues of fact are eliminated. This elimination of

danger is brought about by the provision that if the judge does not cover all the issues in the submission to the jury the parties must demand the submission of such issues before the jury retires. Otherwise, the objection to failure to submit an issue is waived . . . .'" *Bott v. Wendler*, 203 Kan. 212, 221, 453 P.2d 100 (1969) (quoting Gard, Kansas C. of Civ. Proc. Annot. § 60-249[a], p. 230 [1963]).

We believe there is good reason for this rule; it is unthinkable that multiple jury trials would be available to a litigant in the same case and on the same evidence. The fundamental position of Mike and JoAnn—that if other findings were not inherent in the first verdict, they were entitled to a second jury trial—is contrary to the underlying purpose of our Code of Civil Procedure: "to secure the just, speedy and inexpensive determination of every action or proceeding." K.S.A. 2004 Supp. 60-102.

Here, the court proposed submission of the special verdict form: "Do you find that the parties were in a partnership relation?" When Mike and JoAnn failed to demand submission of other fact issues to the jury, they waived any right to a jury trial on such issues. When the district court sustained Leona and Roman's motion to strike the jury demand prior to the appointment of the master, a jury trial of any other issues in this case had already been waived by Mike and JoAnn. Accordingly, the trial court's action was correct, albeit for a different reason. See *Drake v. Kansas Dept. of Revenue*, 272 Kan. 231, 239, 32 P.3d 705 (2001).

Since neither party briefed the issue of waiver, we also provide an analysis of the claim of error as briefed, but any discussion of whether there remained issues that were triable to a jury must be premised upon the assumption (false in this case) that there had not already been a jury trial wherein Mike and JoAnn waived any right to further jury findings under K.S.A. 60-249(a). The discussion may be worthy, however, where it would seem that the parties simply did not realize that referral to a master is not inherently inconsistent with a case triable to a jury.

As expressly contemplated by K.S.A. 60-253, a trial by master is available for cases triable to a jury. The statute specifically permits "all or any issues of fact or law or both" to be referred to a master but requires that in cases triable to a jury, the referral must be limited to "such issues as involve an examination of complex or

voluminous accounts." K.S.A. 60-253(b). In jury actions, the master does not report the evidence but rather testifies to the jury, if available, and any "findings upon the issues submitted to him or her are admissible as evidence of the matters found . . . ." K.S.A. 60-253(e)(3).

Although the parties have addressed on appeal their respective positions of whether there were issues triable to a jury, neither party suggests that these issues did not necessarily involve "an examination of complex or voluminous accounts." In fact, the initial bifurcation suggested by Mike and JoAnn contemplated precisely that—that the accounting and damages issues be reserved based upon "judicial economy," which we interpret as a concession that substantial complexity was involved. Indeed, upon making the referral to the master, the district court noted "the complexities of the issues . . . and the detailed accounting of many years of business operations that may be necessary to finally resolve all issues." Neither party can credibly suggest that the remaining issues were not duly complex and involved voluminous accounts, given the apparent need for 6 years of discovery to prepare for the trial of these issues. Finally, the mere fact that the record on appeal includes seven volumes consisting of almost 2,300 pages devoted to detailed accounting evidence defies any attempt to suggest that the issues referred did not involve voluminous accounts. Clearly, referral to the master was appropriate despite any jury questions that may have remained.

Given an appropriate referral to the master, any complaint regarding the scope of referral should have been made at the time of referral or at the time of trial before the master, suggesting that some of the issues be reserved for a jury proceeding. Upon filing of the master's report, any party feeling aggrieved by the overbreadth of the scope of referral could have moved the court for a jury trial (assuming the remaining issues triable to a jury had not been waived). If granted, K.S.A. 60-253(e) contemplates testimony by the master to the jury in place of or in addition to consideration of the master's report by the court. Our review of the record reveals no such objection, suggestion, or motion by Mike or JoAnn.

We acknowledge that Mike and JoAnn persisted in their quest for a second jury trial until April 2001, but their efforts never seemed to appreciate the manner in which K.S.A. 60-253 accommodates a trial by master when there are issues triable to a jury. *First*, we note that Mike and JoAnn made their informal suggestion to the court long before the order of appointment. This informal suggestion did not discuss the procedure available under K.S.A. 60-253(e) but merely insisted that the special jury verdict reflected inherent findings and that a master "outside the judicial system" would be time consuming and expensive; obviously, the district court responded by appointing a master *within* the judicial system. *Second*, we acknowledge that Mike and JoAnn argued against the motion to strike jury demand in April 2001 that they were entitled to a subsequent jury trial. The problem with their argument (beyond the fact that they had already waived any remaining jury issues) is that it *preceded* the appointment of a master, urged trial *to the court*, and again did not call to the court's attention the availability of K.S.A. 60-253(e). Our Supreme Court has held that participation in a trial before a master, absent a specific and timely objection that the trial by master deprives a party of trial by jury, is a waiver of such rights sufficient for purposes of K.S.A. 60-239(a)(1). See *Mitchell, Trustee v. Moon*, 206 Kan. 213, 219-20, 478 P.2d 203 (1970). *Finally*, we acknowledge that Mike and JoAnn argued upon receipt of the master's report that they had been deprived of a jury, but they again made no motion for a jury trial wherein the master could have testified as contemplated by K.S.A. 60-253(e)(3).

For these reasons, we reject Mike and JoAnn's claim that they were deprived of a trial by jury.

*Did the District Court Err in Appointing a Master and Ordering that Person to Also Serve as a Mediator?*

Mike and JoAnn's final claim of error is that the district court erred in appointing a master and ordering that person to also function as a mediator.

At the outset we agree that there are perils to having a master also serve as a mediator. Mediation is generally conducted under

procedural rules, agreements, or practices that communications made during the proceeding will be deemed confidential by all parties. In fact, in mediations conducted in Kansas under either the Dispute Resolution Act, K.S.A. 5-501 *et seq.*, or the Domestic Mediation Act, K.S.A. 23-601 *et seq.*, both K.S.A. 5-512 and K.S.A. 2004 Supp. 23-605 require confidentiality of all information communicated during such mediation or dispute resolution process, subject to statutory exceptions. In order that mediation be successful, disclosures of strategic strengths and weaknesses need to be shared by the parties with the mediator so that a knowledgeable evaluation can be made in the course of trading offers and counteroffers. When a mediator is asked to step out of this role and assume the impartial role of a master, his or her knowledge of the case would be based in part on these confidential communications, which would have the potential to taint impartiality. The better practice is to avoid such a dual appointment and to preclude any person who serves as a mediator from being assigned to any subsequent role as a factfinder or master in the same case.

Having noted the better practice, we are unwilling to assign error where a complaining party fails to object to the dual appointment. Once again, our review of the record reveals no objection by Mike and JoAnn to the dual appointment, and certainly an objection would have been proper at the time of the appointment, upon the start of mediation, or at trial before the master. Although the mediation here was apparently conducted pursuant to K.S.A. 5-501 *et seq.*, thus triggering the confidentiality provisions of K.S.A. 5-512, there is no specific prohibition in the statute against dual service as a mediator and a factfinder or master. Moreover, K.S.A. 5-512(b)(4) exempts persons required to report information "in order to comply with orders of a court." Finally, we view the absence of any specific objection to the dual appointment as a waiver of such confidentiality, which is specifically permissible under K.S.A. 5-512(a).

In the absence of such an objection to the dual appointment, Mike and JoAnn may not complain of the dual appointment on appeal. A party may not complain of rulings or matters to which he or she consented, or take advantage of any error upon appellate

review which he or she invited or in which he or she participated. *Elwood-Gladden Drainage District v. Ramsel,* 206 Kan. 75, 77-78, 476 P.2d 696 (1970). This rule is particularly true where a party objects to the dual appointment of the same person as a mediator and master for the first time after the master's report has been filed. *Mitchell, Trustee v. Moon,* 206 Kan. at 219; *Stanley v. Weston,* 92 Kan. 317, 320-21, 140 Pac. 878 (1914).

Notwithstanding our disapproval of the dual appointment of the same person as mediator and master as not being the better practice, the lack of a timely and specific objection requires that we affirm the district court on this issue.

Affirmed.