NOT DESIGNATED FOR PUBLICATION

No. 115,704

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JANET S. KAELTER,
*Appellee/Cross-appellant*,

v.

STEVEN L. SOKOL,
*Appellant/Cross-appellee*,

and

In re Parentage of BENJAMIN SARBY SOKOL,
A Minor Child, by His Mother JANET S. KAELTER,

v.

STEVEN L. SOKOL.

MEMORANDUM OPINION

Appeal from Johnson District Court; KEVEN M.P. O'GRADY, judge. Opinion filed January 26, 2018. Affirmed.

*Richard W. Martin, Jr.*, of Martin & Wallentine, LLC, of Olathe, for appellant/cross-appellee.

*Ronald W. Nelson* and *Ashlyn L. Yarnell*, of Ronald W. Nelson, PA, of Overland Park, for appellee/cross-appellant.

Before HILL, P.J., MALONE, J., and MERLIN G. WHEELER, District Judge, assigned.

PER CURIAM: This domestic dispute between an unmarried couple has been litigated for 10 years. Ultimately, the district court made several orders dividing the property of Janet Kaelter and Steven Sokol, as well as determining the parentage, custody, and support of their son. Sokol appeals, challenging the court's appointment of a special master, the methods employed by the master, and the court's ultimate approval and adoption of most of the master's recommendations. He seeks reversal and remand for a new trial.

We must consider seven claims in this appeal—six from Sokol, and one from Kaelter. After giving a brief case history, we address Sokol's six issues in three groups. We begin by reviewing Sokol's two claims of a deficient performance: the master allegedly did not take an oath, and the master and the court did not conduct proper hearings on Sokol's claims. After that, we look at Sokol's two issues arising after the court announced its rulings: the denial of his posttrial motions and then quashing his deposition subpoena he had served on the master. Finally, we examine Sokol's remaining issues concerning their son's IRA: the court ordering it transferred to Kaelter, and then ordering him to reimburse $21,000 he had previously taken from it. Then, we will consider Kaelter's cross-appeal of the district court's order denying her attorney fees for the first appeal.

We find no reversible errors and affirm the judgments of the district court.

*The parties had a 12-year personal relationship.*

The case history begins with the filing of Kaelter's petition. After that, the court appointed a special master. Then, for several months the master worked on the dispute and reported back to the judge. In due course, the court adopted most of the master's recommendations and entered orders accordingly. Sokol objected and over the span of several months the court conducted a series of hearings on various motions filed by the

2

parties. The matter was appealed by Sokol and a panel of this court reviewed one issue and denied Sokol any relief. *Kaelter v. Sokol*, No. 107,401, 2013 WL 1876444, at *1, 7-8 (Kan. App. 2013) (unpublished opinion), *rev. granted* 298 Kan. 1203 (2013). The Supreme Court overturned the panel, finding this court had reviewed a nonappealable order and remanded the case to the district court. *Kaelter v. Sokol*, 301 Kan. 247, 250, 340 P.3d 1210 (2015). On remand, the district court resolved all remaining issues, and Sokol and Kaelter have appealed again to this court.

Sokol and Kaelter lived together from 1994 to 2006, but never married. Their son was born in April 1995. Their relationship deteriorated and in February 2007, Kaelter filed a petition in district court seeking the partition of jointly owned property, a declaration that Sokol was the father of their son, a determination of custody and visitation, and an order for Sokol to pay child support. Later, the district court made temporary orders of joint legal custody of the minor child, placing primary residential custody with Kaelter subject to liberal and reasonable parenting time by Sokol. The court also ordered Sokol to pay child support.

Then, in 2008, over Sokol's objection, the court appointed a special master under K.S.A. 60-253 to preside over the proceedings including all pretrial motions. The court denied Sokol's motion to reconsider and named Greg Kincaid as special master. In July 2009, the master submitted his report, making recommendations about child support, a parenting plan, the division of assets, and reimbursement of medical expenses. The master also submitted to the court a large binder containing documents and exhibits he had accumulated during the proceedings. Sokol objected to the report. The court considered Sokol's objections and, with some noted exceptions, adopted the master's findings of fact and conclusions of law. In its order, the court noted it had reviewed the report as required by K.S.A. 60-253(e)(1) and (2) and using the language of the statute, found the master's findings and conclusions "reasonable and appropriate and not clearly erroneous."

Unsatisfied, Sokol asked for a hearing on the master's report and filed his objections under K.S.A. 60-253(e)(2). He also sought a new trial or to alter or amend the judgment, and filed a motion seeking relief from judgment. Kaelter filed a motion for clarification and reconsideration of the order. The court heard all of the motions in June 2010.

The court announced its decision from the bench and followed with a written order. Essentially, the court denied Sokol's objections relating to the appointment of and handling of the proceedings by the master.

Sokol filed a motion to depose the master, which was denied. Sokol then filed several more motions:

- a motion for reconsideration of the court's order denying his motion to depose the master;
- a motion to dismiss Kaelter's petition for partition for lack of subject matter jurisdiction;
- a motion to reconsider; and
- a supplemental motion to reconsider.

The court held a hearing on these motions and denied them all in its written order in December 2011.

In the first appeal, Sokol appealed to this court and the panel determined the only justiciable claim was his argument that the master failed to take an oath of office as required by law. A panel of this court reasoned that because Sokol knew of the claimed error but did not raise it until well after it could have been corrected by the district court, it was invited error and not reversible. *Kaelter*, 2013 WL 1876444, at *1, 7-8. The panel

4

then granted Kaelter's request for appellate costs and attorney fees under Supreme Court Rule 7.07(b) (2014 Kan. Ct. R. Annot. 70) and K.S.A. 2013 Supp. 23-2216.

In turn, two years later, in 2015, after reviewing the matter, the Kansas Supreme Court dismissed the appeal on jurisdictional grounds by holding that the district court had never entered a final appealable order as required by K.S.A. 2013 Supp. 60-2102(a)(4), because it left unresolved the issue of unreimbursed medical expenses. Thus, this court lacked jurisdiction. The Supreme Court vacated this court's judgment, including the attorney fees awarded to Kaelter. See *Kaelter*, 301 Kan. at 250. The Supreme Court remanded the case to the district court.

With the case now back in the district court, Sokol and Kaelter filed numerous motions. Sokol attempted to subpoena the master for trial, but the court quashed the subpoena. Sokol filed a motion to reconsider.

After hearing all pending motions, the district court ruled on all outstanding issues. Among other things, the court ordered a judgment against Sokol for reimbursement of educational expenses, including $21,000 he had wrongfully removed from the child's IRA. The court refused to rehear decisions regarding the master's appointment and conduct, or the quashed deposition subpoena. The court noted that with this decision, the issues would be ripe for appeal. The court also denied Kaelter's request for appellate attorney fees for the first appeal.

*We review Sokol's claims of deficient performance by the master and the court.*

In this section, we examine two areas of concern raised by Sokol. Initially, we will consider Sokol's contention about the lack of an oath by the master. After that, we look at his complaints about the court's lack of a hearing concerning the master's report.

5

First, Sokol complains that the master did not take an oath as required by K.S.A. 60-253. In his view, this is reversible error. We do not agree because he waited much too long to raise this claim. If it is error, it is invited error and not reversible. As far as we can tell from this record, Sokol first raised this argument to the district court in November 2009, in his motion for a new trial or to alter or amend the judgment filed under K.S.A. 60-259.

In denying the motion, the court made three findings:

- that K.S.A. 60-253 does not require the filing of a *written* oath;

- Sokol did not present any evidence that the master did *not* take an oath;

- and when the report was filed neither party made a contemporaneous objection about the master not taking an oath.

Unmoved, Sokol continued to raise this claim in a motion to reconsider. This time, he alleged that he had talked with the master about taking an oath and the master told him it was not necessary. The district court denied the motion for the same reasons as before. In its memorandum decision, the court found it was inappropriate to revisit the prior decisions.

We review a district court's ruling on a motion to reconsider for abuse of discretion. *Board of Cherokee County Comm'rs v. Kansas Racing & Gaming Comm'n*, 306 Kan. 298, 323, 393 P.3d 601 (2017). It is well established that a judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *Wiles v. American Family Life Assurance Co.,* 302 Kan. 66, 74, 350 P.3d 1071 (2015). We look first at the law.

The applicable statute is clear. Kansas law requires a master to take an oath or give an affirmation. K.S.A. 2016 Supp. 60-253(b) provides: "The master must swear or affirm

to hear and examine the cause, and to make a just and true report according to the best of the master's understanding. The oath or affirmation may be administered by any person authorized to take depositions." The timing of Sokol's objection is problematic.

A close examination of the circumstances shows what we mean. The district court approved the master's report on October 30, 2009. About a year later, on November 10, 2010, Sokol submitted his own affidavit with a second motion to alter or amend the court's approval of the master's report. In that affidavit he describes an alleged conversation between himself and the master about taking an oath, where the master said, "No, I'm not required to do that." Sokol alleged that this conversation with the master occurred on *October 16, 2008*.

If we consider that allegation to be true, that means Sokol clearly knew of this alleged error approximately nine months *before* the master filed his report on July 15, 2009. This also means he knew of this deficiency when he filed his own objections to the master's report on July 31, 2009, but he made no mention of the failure to sign an oath or affirmation in his objections. Despite this knowledge, Sokol elected to do or say nothing about this issue until a year after the October 30, 2009 order which overruled his objections and accepted the master's findings. Failure to act is often fatal in the law.

Caselaw gives us clear guidance on this point. A party may not invite error and then complain of that error on appeal. *Butler County R.W.D. No. 8 v. Yates*, 275 Kan. 291, 296, 64 P.3d 357 (2003). A district court properly denies a motion to alter or amend where the moving party could have, with reasonable diligence, presented the argument prior to the challenged judgment. *Wenrich v. Employers Mut. Ins. Co.*, 35 Kan. App. 2d 582, Syl. ¶ 6, 132 P.3d 970 (2006).

Since we are told in Sokol's affidavit that he knew the master had not taken an oath or filed an affirmation well before the master completed his work, we see no

7

reasonable diligence by Sokol to raise this objection when he first learned of the master's view about not needing to take an oath. The district court could have addressed the issue at least a year and a half before Sokol bothered to voice his complaint. The trial court's ruling was reasonable and we see no error of law or fact. Therefore, we find no abuse of discretion by the court in denying relief to Sokol on this point. We turn now to his complaints about the court.

In his second issue, Sokol complains that the district court never conducted a formal hearing on the master's report, nor did it properly consider his objections to that report. For her part, Kaelter contends that Sokol received a court hearing on his objections after he filed a motion for a hearing. We will review the steps taken by the court and because we deem them adequate, we will not reverse the court's order on these grounds.

The approved procedure for dealing with the work of a master is set out in the statute. Kansas law requires the district court to hold a hearing before adopting the master's report. K.S.A. 2016 Supp. 60-253(e)(2) sets out the timing and steps a court must take when receiving and considering the report:

> "In a nonjury action, the court must accept the master's findings of fact unless clearly erroneous. Within 14 days after being served with notice of the filing, a party may serve on the other parties written objections to the report. Application to the court for action on the report and on objections to the report must be by motion and on notice as prescribed in subsection (c) of K.S.A. 60-206, and amendments thereto. The court *after hearing* may adopt or modify the report, reject the report in whole or in part, receive further evidence or recommit the report with instructions." (Emphasis added.)

Obviously, the phrase "after hearing" is not ambiguous. It means that the court has to hold a hearing. In fact, some federal circuit courts have interpreted the same language to entitle a party who objects to the special master's report a right to be heard on those

objections. See *Kieffer v. Sears, Roebuck & Co.*, 873 F.2d 954, 956 (6th Cir. 1989); *Matter of Chicago, Milwaukee, St. Paul & Pac. R. Co.*, 739 F.2d 1169, 1171-72 (7th Cir. 1984). From our review of the record, we conclude the court did hold a hearing on the master's report.

Frankly, we are unpersuaded by Sokol's argument because the district court heard all of his objections several times. A brief summary of the extensive procedural history of this case illustrates our point. In July 2009, the master submitted his report and Sokol filed objections to the report. In October 2009, the court considered Sokol's objections and, with some noted exceptions, adopted the master's findings of fact and conclusions of law. In its order, the court noted it had reviewed the report as required by K.S.A. 60-253(e)(1) and (2) and found such findings and conclusions "reasonable and appropriate and not clearly erroneous."

In response, Sokol filed several more motions. One asked for a hearing on the master's report and on his objections under K.S.A. 60-253(e)(2), also a motion seeking a new trial or to alter or amend the judgment, and another, a motion seeking relief from judgment. The court then held a hearing on each of those motions in June 2010. During that hearing, Sokol made four arguments:

- the master did not create an adequate record;
- the master improperly calculated Sokol's income for child support purposes;
- the master erred in dividing the lake house property; and
- the master erred in turning over their son's IRA to Kaelter.

The record demonstrates that the court thoroughly reviewed Sokol's complaints and ruled on each point.

Sokol did offer some clarification of his position. Regarding the failure to create an adequate record, Sokol suggested that one remedy would be for the court to hold a limited hearing on issues that needed a better record, such as the income and lake house issues. Sokol favored that option, as opposed to setting aside the master's report entirely and setting the matter for trial. On this issue of a proper record, the court found the pertinent statute—K.S.A. 60-253—does not require the making of a written or oral record of the proceedings unless a party so requests. It found that neither party made a contemporaneous request for a record or a contemporaneous objection to proceeding without a record until after the master submitted his report. The court also found that K.S.A. 60-253 does not require the court to review all evidence viewed or testimony heard by the master. But the court had reviewed extensive documentation relied on and submitted by the master, and received additional evidence submitted by the parties at the June 15, 2010 hearing.

Then, regarding child support, after comparing both parties' tax returns, Sokol argued that there was no logic to the master taking into account depreciation and expenses when figuring Kaelter's income, but ignoring depreciation and expenses when figuring Sokol's income. Sokol argued there was no support for the special needs adjustment of $300 per month because their son was not a special needs child. Sokol proffered multiple exhibits—letters between his attorney and accountant, backup documentation for all of Sokol's expenses, and documentation of an ongoing dispute between Kaelter and the Shawnee Mission school district regarding whether their son had special needs.

The district court agreed with the master that Sokol's income was $89,215 for child support purposes. The district court found that Sokol used his rental business for purposes of sheltering income and that the depreciation and losses claimed from that business should not be used to offset his income. The record supports the court's findings. The court did eliminate the special needs adjustment as we explain below.

10

Regarding the lake house, Sokol argued that the court had no jurisdiction to enter a monetary judgment, but could only divide the property. Sokol argued the lake house was his because he paid all of the bills. Sokol proffered an exhibit containing backup documentation for all of the expenses he paid on the lake house. When it considered the issue of the lake house, the court found the property was "clearly jointly owned by the parties"—it was titled in both parties' names, and both parties made an initial $15,000 investment in the property. The court held it could equitably divide the property as recommended by the master.

Regarding the IRA, Sokol argued the court had no jurisdiction over the IRA because there was never any intent that Kaelter would have an interest in the IRA. The court found it had jurisdiction over the child's IRA accounts and directed the transfer of the accounts from Sokol to Kaelter. Because the court ordered Kaelter to be the custodian of the child's accounts, the court eliminated the $300 per month special needs consideration from the master's child support worksheet. The court did not have sufficient information to determine if the funds in the child's accounts were adequate to cover his special needs. The court ordered the parties to provide each other with any documents regarding the accounts and retained jurisdiction over the issue. The court also eliminated the $100 per month parenting time adjustment from the child support worksheet. The court left open for further motion the issue of unreimbursed medical expenses because it did not have sufficient documentary evidence.

It is true that not all was resolved and some disputes remained. Sokol argued that the court needed to hold yet another hearing. Sokol said, "[W]e're not here presenting everything that we would present." Kaelter disagreed that a hearing was necessary to rehash all of the issues and stated that the current hearing on each parties' perceptions of the deficiencies of the master's report satisfied the requirement within K.S.A. 60-253. But Kaelter acknowledged that some issues, such as the reimbursement of medical expenses

11

for which the master provided no supporting documentation, would require a referral back to the master or a hearing.

Considering all of this, we hold the June 15, 2010 proceeding constituted a hearing under K.S.A. 60-253. The parties were given an opportunity to be heard on their objections to the master's report. Sokol submitted additional documentation to support his claims, which the court considered along with the exhibit book compiled and relied upon by the master. The court considered the parties' objections and gave a reasoned explanation for its decisions. Each party won some issues and lost some issues. The record shows the court left open for further consideration those issues for which the master did not provide adequate supporting documentation. The court took up those issues at a later hearing.

Sokol speculates that "[o]ther shortcomings and inadequacies could have been revealed at a hearing by the district court," such as the master's failure to interview the accountant, or a possible conflict of interest because the master had once represented a client in a lawsuit against Sokol's brother. Sokol fails to show us the legal significance of his speculations. Sokol certainly did not raise these issues in his objections to the master's report. The district court heard the parties' arguments on Sokol's objections to the master's report. The statute certainly does not give Sokol the right to an endless fishing expedition, searching to discover additional inadequacies in the master's report. Litigation cannot go on forever.

Moreover, K.S.A. 2016 Supp. 60-253(e)(2) states that the district court "may" receive additional evidence, but is not required to. Thus, the court was not legally required to hear additional evidence on all of Sokol's objections if the master's findings were not clearly erroneous. Additionally, Sokol has failed to show us how things would have turned out differently had the trial court proceeded in a different fashion. We will not reverse a trial court because a hearing might be resolved differently. The district court

12

conducted a hearing on the master's report as required by law. There is no reversible error here. We turn now to Sokol's complaints about the master.

*The denial of Sokol's posttrial motions and quashing the subpoena are not erroneous.*

Sokol claims that the court erred when it denied his posttrial motions because the master had engaged in improprieties, disregarded K.S.A. 60-253, and denied Sokol fundamental fairness and due process. In opposition, Kaelter contends that Sokol's complaints were not preserved for appeal and K.S.A. 60-253 does not require the formal procedure that Kaelter asks for. As far as we can tell, over an extended period, Sokol filed four separate motions on this issue.

Sokol is an enthusiastic litigator. He filed his first objections to the special master report on July 31, 2009. Four months later, in his motion for a hearing on his objections to the master's report, in his motion for a new trial or to alter or amendment the judgment, and in his motion for relief from judgment, he made further objections. Then, a year later, in his motion to reconsider, Sokol asked the court to reconsider its ruling that he did not object to the master's failure to make a proper record and made additional objections to the master's report and the master's actions. Finally, two months after that, in his supplemental motion to reconsider filed on January 14, 2011, Sokol did not complain about improprieties by the master.

In this appeal, Sokol has boiled his claims about the master to these. He contends the master:

- failed to file his report;
- failed to file a transcript of the proceedings;
- failed to file the original exhibits with the clerk of the district court;

13

- never conducted a formal hearing at which the parties could hear and contest the evidence or cross-examine the witnesses; and
- refused to allow Sokol's counsel to participate in the proceedings.

We will consider each in turn.

❖ *Failure to file the master's report*

Because Sokol did not raise this issue—that the master failed to file his report— before the trial court, he cannot raise it now on appeal. See *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011).

❖ *Failure to file a transcript of the proceedings*

Sokol did complain to the district court that the master did not file a transcript of the proceedings. In dealing with this, the district court found:

> "The Special Master statute does not require the taking of a written or oral record of the proceedings but provides that '[w]hen a party so requests, the master shall make a record of the evidence offered and excluded in the same manner and subject to the same limitations as provided in K.S.A. 60-243(c) for a court sitting without a jury.' Neither party made any contemporaneous request for a record or made a contemporaneous objection to proceeding without a record until after the Special Master submitted his Report to the Court."

Indeed, the special master statute provides that "[t]he master may put parties and witnesses on oath and may examine them. *When a party requests, the master must make a record* of the evidence offered and excluded in the same manner and subject to the same limitations as a court sitting without a jury." (Emphasis added.) K.S.A. 2016 Supp. 60-253(c). But the statute also states: "The master must file the report with the clerk of

14

the court, and, in a nonjury action, unless otherwise directed by the order of reference, *must file with it a transcript of the proceedings* and the evidence and the original exhibits." (Emphasis added.) K.S.A. 2016 Supp. 60-253(e)(1).

A rule of statutory construction is helpful here. When construing statutes to determine legislative intent, appellate courts must consider various provisions of an act together (*in pari materia*) with a view of reconciling and bringing the provisions into workable harmony if possible. *Friends of Bethany Place v. City of Topeka*, 297 Kan. 1112, 1123, 307 P.3d 1255 (2013). To reconcile the two provisions of the special master's statute into workable harmony, the statute requires the master to file a transcript of the proceedings when such a record has been requested by one of the parties. Here, neither party contemporaneously requested a record.

Even if we interpret the statute to require the master to file a transcript whether requested or not, then Sokol still faces an invited error problem. He did not complain about the master's failure to keep a record of the proceedings until well after it could have been corrected by the district court.

❖ *Failure to file exhibits*

Sokol complained to the district court that the master "[f]ailed to include all exhibits which were submitted to him." His complaint now on appeal is that the master failed to file exhibits with the clerk of the district court.

The master gave his reasons for not filing the exhibits. In his report, the master stated: "The documents relied upon in making the recommendations contained in this Report are not filed with the Clerk so as to avoid disclosing information to the public that is of a confidential nature." However, the master stated that a copy was provided to the court and both parties.

15

The district court explained that the report and exhibits were part of the court file, but not of public record for confidentiality reasons:

"But the documents, in fact even the Special Master's report, is filed but not of public record. It is in the court file. These documents I will retain for the purposes of any appeal or further need of these documents and not filing them, as Mr. Kincaid noted, because of obviously the nature of the financial documents of the parties, not only identifying information, but also their financial assets and debts and other related matters that should not be part of the public record.

"So just for clarifying that so everyone knows, we will retain these documents, everything that was utilized in and forwarded to me by Mr. Kincaid, as well as the exhibits that were admitted back on the June 15th hearing."

Keeping private information private is not prejudicial to Sokol. Sokol has shown no abuse of the court's discretion here.

❖ *Never conducted a formal hearing*

Sokol complained to the district court about the lack of certain aspects of a formal hearing, such as not putting witnesses under oath, engaging in ex parte communication, and the lack of a record. The district court found that the parties had proceeded without objection and the statute does not require the master to place witnesses under oath nor have a court reporter transcribe a record. In its ruling from the bench, the court stated:

"It was also raised by Mr. Sokol that there was no record taken in this matter by the Special Master. Again, I do not believe the Special Master proceedings require a transcript or record to be taken. In fact, the parties both proceeded in the method by which Mr. Kincaid operated due to the volumes of exhibits and the extensive contact that Mr. Kincaid clearly had with both parties on an ongoing basis from approximately September of 2008 through the time that he eventually rendered his recommendations in his report July of 2009. There, again, is not a contemporaneous objection. There's an

16

objection made after the fact of not maintaining a record or having a court reporter transcribing any portion of the quote-unquote 'record.' And by the very nature of Mr. Kincaid's handling of the matter, specifically I'm thinking of not only having contact and receiving evidence on an ongoing basis from each of the parties, he spoke with the parties' accountant on major issues with regard to income levels for developing child support matters. All of this occurred throughout the entirety of the appointment of the Special Master. No objections were ever raised until after the Special Master issued his report. Therefore, I do not feel that that is a valid objection that would require the Court now to disregard the Special Master's recommendations.

"The fact that witnesses were not under oath are neither mandatory nor required under the broad scope of the Special Master statute allowing for those proceedings."

Sokol argues that K.S.A. 60-253 contemplates that the master will conduct a formal hearing and cites cases from other jurisdictions holding that a special master must conduct a hearing, allow for cross-examination, and take evidence in the presence of the parties. See, e.g., *Oswald v. Dawn*, 143 Colo. 487, 493, 354 P.2d 505 (Colo. 1960); *Madden v. Madden*, 44 Haw. 442, 448, 355 P.2d 33 (Haw. 1960). We focus on Kansas law.

K.S.A. 2016 Supp. 60-253(c) states, in part:

"The order [of reference to the master] may fix the time and place for beginning and closing the hearings and for filing the master's report. Subject to the specifications and limitations stated in the order, the master has the power to regulate all proceedings in every hearing before the master and to do all acts and take all measures necessary or proper for the efficient performance of the master's duties under the order. The master may require the production of evidence on all matters embraced in the reference, including the production of applicable books, papers, vouchers, documents, writings and electronically stored information. The master may rule on the admissibility of evidence unless otherwise directed by the order of reference. The master may put parties and witnesses on oath and may examine them. When a party requests, the master must make a

17

record of the evidence offered and excluded in the same manner and subject to the same limitations as a court sitting without a jury."

This statute gives many options to a master. Indeed, there are many things a master "may" do, such as put parties and witnesses under oath and examine them. But such actions are not required by the statute's express terms. In contrast, when a party requests a record, the master "must" make a record of the evidence. Here, where there were no requests, nor any contemporaneous objections to what the master was doing, we agree with the district court. The matters Sokol complains about are not reversible errors.

One case is instructive. In *Schauf v. Schauf*, 33 Kan. App. 2d 665, 107 P.3d 1237 (2005), a party complained on appeal that the court erred in appointing a master and ordering the master to also serve as a mediator. This court disapproved of the dual appointment. This court held that a party may not object to a dual appointment of the same person as mediator and master for the first time after the master's report has been filed. 33 Kan. App. 2d at 675-76. "A party may not complain of rulings or matters to which it consented, or take advantage of any error upon appellate review which it invited, or in which it participated." 33 Kan. App. 2d 665, Syl. ¶ 8.

Though the district court did not order the master here to act as a mediator, the record shows that Sokol participated in a mediation-like atmosphere conducted by the master in this case. Sokol did not object until well after the master's report was filed. Therefore, Sokol's claim fails. The district court did not abuse its discretion here.

❖ *Refused to allow counsel to participate*

Sokol only briefly mentioned in his own affidavit attached to his motion to reconsider that he had to appear pro se against his will because his attorney was "not allowed" by the master. We do not think he preserved this issue for appellate review.

18

Sokol did not raise this issue in his motion to the district court. He does not cite any other place in the record where he raised this argument. No factual findings were made on this issue that we can review. An issue not raised before the trial court cannot be raised on appeal. *Wolfe Electric, Inc.*, 293 Kan. at 403. At this point, we examine Sokol's complaint about the court quashing his subpoena served on the master.

Sokol contends the district court erred by denying his attempt to depose the master and quashing his subpoena for the master to appear at trial. He contends the master's testimony was needed to prove, among other things, that the master took no oath and to compel the master to produce transcripts of the proceedings.

In 2011, the district court considered and denied Sokol's motion to depose the master, stating: "Defendant merely seeks a second or third chance to challenge the findings of the Special Master through his request to take the deposition of Mr. Kincaid. The basis for such extraordinary action is clearly an invasion of the thought processes of this fact-finder and is therefore improper." In 2016, the district court quashed the subpoena because the court was not going to reopen issues regarding the master's alleged improprieties, and the master's testimony was not relevant to the open issues. The court also expressed doubt about the propriety of calling the master to testify because the master was acting as a judicial officer.

Sokol argues that the court's rationale is inapplicable to this case because of the master's improprieties. A district court's decision regarding whether to quash a deposition is reviewed for abuse of discretion. Sokol bears the burden to show an abuse of discretion. See *Miller v. Glacier*, 284 Kan. 476, 498, 161 P.3d 730 (2007).

Sokol has not met his burden to show an abuse of discretion. He cites no authority concerning the propriety of the master's testimony under these circumstances. Failure to support a point with pertinent authority is akin to failing to brief the issue. *University of*

19

*Kan. Hosp. Auth. v. Board of Comm'rs of Unified Gov't*, 301 Kan. 993, 1001, 348 P.3d 602 (2015).

We note that K.S.A. 60-253(e)(3) does allow a master to testify at trial on cases tried to a jury. See *Schauf*, 33 Kan. App. 2d at 673-74. But this was not a jury case. In a nonjury action, in contrast, the court "must accept the master's findings of fact unless clearly erroneous." K.S.A. 2016 Supp. 60-253(e)(2). The statute does not contemplate the master testifying in a nonjury action. The district court was correct—the master was acting in a judicial capacity here.

Again, it is important to note that Sokol did not attempt to depose the master until six months after the district court had overruled his objections to the master's report. He was trying to rehash these matters that had been settled previously. And, assuming the master would have testified that he took no oath and did not transcribe the proceedings, that testimony would not change the outcome. Sokol knew of these alleged errors and elected to do or say nothing until well after the master had completed his report and the court adopted it.

We have demonstrated that none of Sokol's procedural complaints are reversible. While not frequently used by the district courts, the appointment of a special master is an option available to the court. The master, in turn, is in a quasi-judicial position and has several statutory options on how to conduct the work the court has directed the master to do. From our reading of this record, that is what happened here. What Sokol claims to be an impropriety is not improper. The district court painstakingly considered each of Sokol's many complaints. The methods of the master here are not reversible, and the court's refusal to modify them is not reversible either.

*We will not set aside the court's orders about the child's IRA.*

First, Sokol contends the district court erred in ordering him to reimburse Kaelter because the "sole basis" of that order was the master's recommendation. The record shows a much different story. After we consider that issue, we turn to his second claim about transferring the child's IRA to Kaelter.

The master found that the parties accumulated a Roth IRA and other savings for the benefit for their minor child. The master noted that Kaelter, alone, had financed the child's educational costs. The child was enrolled in Accelerated Learning which cost $1,400 a month. The master stated that Sokol "controls [the child's] IRA and has refused to liquidate it to help to defray this cost. Nor has [Sokol] in any other way paid for [the child's] educational costs." The master determined that the Roth IRA and other investments should be transferred to Kaelter to manage for the child's benefit. The master reasoned that Sokol was behind in his child support payments and had not contributed to the child's educational needs. Kaelter, as the primary residential parent, was better suited to manage the funds for the child's benefit. A few days later, Sokol withdrew $21,000 from the child's IRA account. Sokol forged his son's signature to endorse the check and used the money to pay his personal attorney fees.

When the district court adopted the master's recommendations, it ordered that the Roth IRA and other investments accumulated for the benefit of the child be transferred to Kaelter as a fiduciary for the benefit and use of the funds for the child.

At a later hearing, the court found that Sokol had not signed over custodianship of the accounts to Kaelter and provided only two pages relating to the accounts. The court ordered Sokol to sign over custodianship of the accounts within 48 hours and awarded Kaelter attorney fees for delays in producing the ordered documents. Sokol signed the forms that day.

21

Kaelter filed a motion for reimbursement and sanctions. She alleged that she sent a business records subpoena to the financial institution holding the IRA account. She then discovered that Sokol had taken $21,000 out of the IRA account in July 2009, and deposited the money into his personal checking account.

The court found that the IRA account should have been available for payment of educational expenses. The court ordered a judgment against Sokol for reimbursement of educational expenses, including the $21,000 wrongfully removed from the child's IRA. The court also found sanctions appropriate because within days of the issuance of the master's report, Sokol forged his child's signature and transferred over 70 percent from the IRA account for his own personal use. Then he engaged in a two-year litigation battle to hide what he had done. "Mr. Sokol's actions both on a personal level and in his litigation strategy cannot be seen as anything other than a bald faced attempt to hide the truth."

The record discloses that the district court carefully considered whether the IRA funds could be used to pay the child's educational expenses on many occasions. Sokol was given the opportunity to present documentation regarding the IRA account to the court, and indeed was ordered to produce documentation relating to the account to Kaelter and to transfer custodianship to her. But Sokol, in what appears to be a clear attempt to hide his wrongful removal of $21,000 from his son's account, failed to comply with the court's orders. Sokol's own action of appropriating his son's money for his own use shows he should not have been the custodian on that account.

In his second issue about the IRA, Sokol contends the district court erred in ordering him to transfer the child's IRA to Kaelter. He contends the district court lacked jurisdiction over the account because no evidence was presented that the parties jointly accumulated the account or acquired the account with an intent for both parties to have an interest in it. Thus, he argues the account was not subject to division by the court under

22

*Eaton v. Johnston*, 235 Kan. 323, 329, 681 P.2d 606 (1984). He argues nothing in the parentage statutes grants the district court jurisdiction over the account and it was not an authorized order under K.S.A. 23-2215. In opposition, Kaelter argues that the district court did not divide the IRA account as joint property under *Eaton* but contends, instead, that the IRA was the child's property under *Wilson v. Wilson*, 37 Kan. App. 2d 564, 569-70, 154 P.3d 1136 (2007). Thus, she argues the court correctly determined the IRA money was available for payment of the child's education expenses and granted judgment to Kaelter for the amount Sokol wrongfully took out of the account.

Caselaw is clear. In *Eaton*, the court held that for parties that were not married but cohabitated, the court may, in its discretion, make an equitable division of property either jointly accumulated by the parties or acquired with intent that both parties have an interest in the property. 235 Kan. at 329.

According to Sokol's testimony at the hearing in 2016, there were two accounts in the child's name: a uniform gift to minors account and a Roth IRA. Kaelter put the majority of the money into the uniform gift to minors account. Sokol testified he opened up the Roth IRA in his son's name after consulting with his tax accountant to draw tax-free interest. He believed the money was his, not his son's. He put his son's name on the account and himself as the responsible party.

The child testified that he was aware there were accounts in his name. He understood that he was effectively being paid from his father's company. He helped in the office doing minor things such as filling tape dispensers. Kaelter testified that the child was paid exactly the amount that could be put into a Roth IRA each year from the company.

The district court also had jurisdiction because this was a paternity action and the IRA certificate was in Sokol's possession. The court had authority to provide for the

23

child's support. K.S.A. 23-2215(c) provides that "Upon adjudging that a party is the parent of a minor child, the court shall make provision for support and education of the child."

This has been a very contentious lawsuit with many hearings. The record oftentimes is confusing because there are so many motions about the same issues filed by Sokol over the years. We see no reason to reverse; therefore, we affirm the district court in every respect.

*We turn to Kaelter's cross-appeal.*

After this court issued its opinion in Sokol's first appeal in 2013, the panel granted Kaelter's request for appellate costs and attorney fees under Supreme Court Rule 7.07(b) (2014 Kan. Ct. R. Annot 70) and K.S.A. 2012 Supp. 23-2216, giving the court in a parentage action the discretion to award costs and attorney fees as justice and equity may require. When the Supreme Court vacated the judgment of this court for lack of jurisdiction, it also vacated the attorney fees award.

When the case returned to the district court, Kaelter filed a motion requesting attorney fees, which included a request for fees incurred in the first appeal. The district court ordered Sokol to pay Kaelter attorney fees as a sanction because Sokol "knowingly and intentionally diverted funds earmarked for his son's education to his own personal use." The court found Sokol's "misconduct and tactics have inflated the cost of this litigation and unnecessarily delayed the orderly administration of justice. Mr. Sokol has abused the litigation process in an attempt to cover up his misdeeds." But the court denied Kaelter's request for appellate attorney fees, stating it had no authority to do so.

Now in this cross-appeal, Kaelter contends the district court erred by finding it lacked jurisdiction to award her attorney fees relating to the prior appeal. She argues the

24

district court had authority under K.S.A. 2013 Supp. 60-211 and K.S.A. 23-2216 to award attorney fees. Sokol maintains that the district court was without authority to award appellate attorney fees.

Indeed, the Kansas Supreme Court rules authorize an award of appellate attorney fees. "*An appellate court may award attorney fees* for services on appeal in a case in which the district court had authority to award attorney fees." (Emphasis added.) Supreme Court Rule 7.07(b)(1) (2017 Kan. S. Ct. R. 51). Obviously, from that wording, the rule contemplates that the motion for attorney fees must be made to the appellate court.

Going deeper into the subject, caselaw persuades us that only appellate courts can award appellate attorney fees. In *Evans v. Provident Life & Acc. Ins. Co.*, 249 Kan. 248, 265, 815 P.2d 550 (1991), the Kansas Supreme Court held that "[c]ivil appellate attorney fee awards are to be determined by the appellate court hearing the appeal. Motions for attorney fees incurred before the Court of Appeals should be determined by the Court of Appeals." The court in *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 165-67, 298 P.3d 1120 (2013), reaffirmed the holding in *Evans*. "*Evans* informed Snider and the district court that only the Court of Appeals could consider the reasonableness of the appellate fees related to the proceedings before the Court of Appeals." 297 Kan. at 168.

The district court correctly ruled that it was not authorized to award attorney fees relating to the prior appeal. We will address the parties' requests for appellate attorney fees in a separate order.

The rulings of the district court are affirmed.